JOHN E. HILES, Respondent, v. MARIA J. FISHER, Impleaded, etc., Appellant.

The common-law right of a husband to take during coverture the rents and profits of lands held by him and his wife as tenants by the entirety, and to assign and dispose of them during that period, did not spring from the peculiar nature of this estate, and is not an incident or characteristic of it, but is simply a right inuring to the husband from the general principle of the common law which vested in him *jure uxoris* the rents and profits of all his wife's lands, whether held by a sole or joint title, during their joint lives.

While, therefore, the acts relating to the rights of married women have not abrogated the common-law doctrine of tenancy by the entirety, and under a conveyance to a husband and wife they take not as tenants in common or joint tenants, but by the entirety, and upon the death of either the survivor takes the whole estate, as the right of the husband to the rents and profits of the wife's lands during their joint lives has been completely swept away by said statutes, he is not exclusively entitled to the usufruct of the lands so held by them in entirety, but they are tenants in common or joint tenants of the use, each being entitled to one-half of the rents and profits, so long as the question of survivorship is in abeyance.

Accordingly *held*, where a husband executed a mortgage upon lands deeded to him and his wife, that the mortgage was effectual to cover his interest, which was a right to the use of an undivided half of the estate during their joint lives, and to the fee in case he survived her; and that the purchaser on sale under a foreclosure of the mortgage acquired this interest, and became a tenant in common with the wife subject to her right of survivorship.

*Hiles* v. *Fisher* (67 Hun, 229), modified.

(Argued October 19, 1894; decided January 15, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 7, 1893, which directed a judgment in favor of plaintiff upon a case submitted under section 1279 of the Code of Civil Procedure.

The facts stated are substantially as follows:

The defendants are and for the past thirty years and upwards have been husband and wife. On or about the 22d of March, 1866, the defendants, by a deed to them as husband

and wife, took title to a farm of about forty-four acres in the town of Dryden, Tompkins county, N. Y., which they have ever since occupied and possessed as their home under said deed with no other title. This deed runs to "William R. Fisher, of the town, county and state aforesaid, and Maria J. Fisher, his wife," and the consideration therein stated is three thousand dollars. It was duly recorded on the 9th of May, 1866. The purchase price was wholly paid by the wife, who, however, consented to the form of the deed as taken by them.

On or about March 31, 1885, the defendant William R. Fisher borrowed of the plaintiff $1,400, for which he and his wife gave their promissory note. On or about February 20, 1886, William R. Fisher, to secure the payment of this debt to plaintiff, and other small amounts of borrowed money, amounting then altogether to $1,550, executed and delivered to one Goodrich for plaintiff a mortgage in the usual form granting and conveying the said forty-four acres, and conditioned for the payment of $1,550, one-half in one year and balance in two years, with interest at five per cent annually. This mortgage was dated and acknowledged February 20, 1886, and was immediately assigned to plaintiff. It was recorded August 5, 1890. Fisher, of the money which he borrowed of plaintiff, used one thousand dollars in part payment for thirty-five acres of land in the same town, the title to which he had taken in his own name. At the time the mortgage was given the plaintiff knew that the wife's money paid for the forty-four acres and that she refused to sign the mortgage, but he supposed that William R. Fisher held the title and the wife had only her dower right therein, and he, therefore, said that the mortgage was good enough without her signature and so took it, and he told the defendants that he did not calculate that William R. Fisher should ever pay the mortgage; that he calculated to give it to him by his will, and all he wanted was the interest while he lived. The description in the mortgage was copied from the deed which was present when the mortgage was executed and delivered.

On 3d of September, 1890, William R. Fisher conveyed to Maria J. Fisher both of said parcels of land by quit claim deed recorded that day. Default was made in the payment of interest on the mortgage and it was duly foreclosed by statutory foreclosure, and on the sale thereunder, which occurred February 6, 1892, the premises were bid in by the plaintiff for the sum of five hundred dollars, the amount then unpaid on the mortgage being $1,863.37 besides the expense of foreclosure, thereby vesting in plaintiff the entire fee so far as the mortgagor could lawfully have conveyed at the date of the mortgage under the same circumstances. Notice of the foreclosure was duly served on both defendants. Mrs. Fisher thereafter and before the sale commenced an action in the Supreme Court against the plaintiff and said Goodrich and her husband, asking that the mortgage be declared void as to her and be set aside as a cloud upon her title and that the foreclosure of the mortgage be restrained. A temporary injunction was obtained but vacated by the court upon the papers upon which it was granted. On the foreclosure sale Mrs. Fisher gave notice of her claims. After the sale the plaintiff duly demanded possession of each of the defendants and they severally refused to deliver the same and now withhold it.

Upon these facts the plaintiff claimed the right to recover the premises, with the right to hold the same during the joint lives of the husband and wife, and in fee in case the husband survives the wife. The defendant Mrs. Fisher claims that the mortgage not having been signed by her was void and that Mr. Fisher's interest having been conveyed to her, she is the absolute owner; that by reason of her having paid for the property she is equitable owner of the whole; that in any event she is entitled to the possession during the joint lives of herself and husband and to the fee in case she survives.

The General Term rendered judgment adjudging that by the sale under the mortgage the plaintiff acquired the right of possession of the whole property during the joint lives of Mr. and Mrs. Fisher and to the fee in case the husband survived the wife.

*A. P. Smith* for appellant. Where lands are deeded to
husband and wife jointly, and where it is conceded that she
paid the whole consideration and was thus at least the equi-
table owner, the husband cannot sell and convey the property
to a person knowing all of the facts, so as to enable him to
throw the wife out of possession of her equitable estate, and
deprive her of the enjoyment of her own lands. (*O' Connor
v. McMahon*, 54 Hun, 69 ; *Chandler* v. *Cheney*, 37 Ind. 391 ;
*Stelz* v. *Schreck*, 37 N. Y. S. R. 663 ; *Bertles* v. *Nunan*, 92
N. Y. 163 ; *Morrison* v. *Seybold*, 93 Ind. 298 ; *Abshie* v.
*State, etc.*, 53 id. 66 ; *McConnell* v. *Martin*, 52 id. 436 ;
*Carven* v. *Smith*, 90 id. 222 ; *Corinth* v. *Emery*, 63 Vt. 505.)
The legislature has not cut down the rights of married women.
The effort has been and is continually being made to increase
their rights, and to place married women on the same foot
ing as to the enjoyment of their property occupied by *femes
sole*. (Laws of 1848, chap. 200, § 1 ; *Miner* v. *Brown*, 133
N. Y. 308 ; *Power* v. *Lester*, 23 id. 429 ; *Ballin* v. *Dillaye*,
37 id. 35 ; *Bodine* v. *Killeen*, 53 id. 93 ; *Rowe* v. *Smith*, 45
id. 230 ; *Baum* v. *Mullen*, 47 id. 577 ; *Cashman* v. *Henry*,
75 id. 103 ; *Diver* v. *Diver*, 56 Penn. St.) But if the law
cannot be deemed to be settled on the foregoing proposition,
that since the "Married Woman's Acts" in this state, the
husband cannot sell or incumber the lands held by him and
his wife by the entirety, then we say that the wife's equity
and the entire want of equity in the husband in this case,
should lead to a construction in her favor, at least for the
purposes of this submission. (*Ketchum* v. *Wadsworth*, 5
Wis. 105 ; Beach on Mod. Eq. Juris. § 190 ; *Kenny* v. *Udall*,
5 Johns. Ch. 465, 477 ; 3 Cow. 590 ; *Howland* v. *Myers*, 6
Johns. Ch. 25 ; *Glen* v. *Fisher*, Id. 33 ; *Van Epps* v. *Van
Deusen*, 4 Paige, 64 ; *Wicks* v. *Clarke*, 3 Edw. Ch. 58 ; *Part-
ridge* v. *Havens*, 10 Paige, 618 ; *Cunningham* v. *Bell*, 83 N.
C. 328 ; *M. E. Church* v. *Jaques*, 3 Johns. Ch. 113.)

*S. D. Halliday* for respondent. The defendants took title
in 1866 as tenants by the entirety. (*Bertles* v. *Nunan*, 92 N.

Y. 152; *Miner* v. *Brown*, 133 id. 308; *Ward* v. *Krum*, 54
How. Pr. 95; *In re Albrecht*, 136 N. Y. 91; *Joss* v. *Fey*, 129
id. 17.)   The plaintiff's mortgage and his purchase upon the
foreclosure sale under it covered the husband's title, which
included the exclusive use and control of the premises during
the joint lives of defendants, and the remainder in fee in case
the husband survives his wife.   (1 Washb. on Real Prop. 577;
1 Prest. Est. 135; *Ames* v. *Norman*, 4 Sneed, 683; *Barber*
v. *Harris*, 15 Wend. 615; *Beach* v. *Hollister*, 3 Hun, 519;
*Coleman* v. *Bresnahan*, 54 id. 619; *Grosser* v. *City of
Rochester*, 60 id. 379; *Demby* v. *City of Kingston*, Id. 294;
*Meeker* v. *Wright*, 76 N. Y. 271; *Chandler* v. *Cheney*, 37
Ind. 391; *Zorntlein* v. *Bram*, 100 N. Y. 12; *Barber* v. *Har-
ris*, 15 Wend. 615; *Jackson* v. *McConnell*, 19 id. 180.)   The
common-law rights of husband and wife as tenants by the
entirety still prevail unchanged by the statutes in any respect.
(*G. S. Bank* v. *Jung*, 18 N. Y. Supp. 709; *Grosser* v. *City
of Rochester*, 60 Hun, 380; *Gifford* v. *Rising*, 55 id. 61;
*Coleman* v. *Bresnahan*, 54 id. 619; *Hiles* v. *Fisher*, 67 id.
229; *Demby* v. *City of Kingston*, 60 id. 380; *Bertles* v.
*Nunan*, 92 N. Y. 152.)   The contention that the common-
law rule requires the husband to apply so much of the rents
and profits, etc., as is necessary to the support and mainte-
nance of his wife and family cannot be sustained.   (2 Lewin
on 'Trusts, 741; *Ward* v. *Ward*, L. R. [14 Ch. Div.] 506.)
Courts strongly oppose any innovation upon the common-law
doctrine of tenancy by the entirety.   (*Wright* v. *Sadler*, 20
N. Y. 320; *Torrey*, 14 id. 430.)   The action commenced by
defendant Maria J. Fisher to declare said mortgage void as to
her and setting the same aside as a cloud upon her title, and
decreeing that a perpetual injunction issue restraining the
defendant from proceeding to foreclose said mortgage or to
sell the said real estate under such foreclosure, should be dis-
missed, with costs.   (*M. Bank* v. *Thompson*, 55 N. Y. 7.)

ANDREWS, Ch. J.   It was decided in *Bertles* v. *Nunan* (92
N. Y. 152) that the separate property acts relating to the

rights of married women had not abrogated the common-law doctrine, that under a conveyance to husband and wife they take not as tenants in common, nor as joint tenants, but by the entirety, and upon the death of either the survivor takes the whole estate. In that case the husband had died, leaving his wife surviving, and the question was whether the wife as survivor took upon the death of her husband the entire fee under the doctrine of the common law. The question, what change, if any, had been wrought by the separate property acts in respect to the common-law rights of the husband to control and use the property conveyed to husband and wife during their joint lives, was not considered or decided, but was expressly reserved on the ground that it was not involved in the case then before the court. That question is involved in the present case and must now be decided.

The decision in *Bertles* v. *Nunan* is supported by the great weight of authority in other jurisdictions in this country, but in some of the states it has been held that as a consequence of statutory provisions substantially like those in this state, conferring upon married women the right to take and hold separate property to their own use, free from the control of their husbands, as *femes sole*, estates by entireties have been abrogated and turned into tenancies in common. In the states where this construction has been put upon the married women's acts, the question of the rights of the parties to the usufruct during their joint lives could scarely arise, because it is one of the generally admitted results of this legislation that the common-law right vested in the husband to the rents, profits and use of his wife's real estate during their joint lives has been destroyed.

It is, however, a much more serious question what the effect of this legislation is upon the common-law right of the husband to the usufruct during the joint lives of the husband and wife, of lands conveyed to them jointly, in those states where it is held that notwithstanding the new legislation a conveyance to husband and wife retains its common-law character and incidents. If the right of the husband to the use during the joint lives of lands held under this tenure was a right growing

out of and incident to this particular species of tenancy; in other words, if it was one of its specific and essential characteristics, then it would be difficult to segregate this right from the other rights incident to and flowing from the tenancy, and to say that while the estate by entireties continues this feature of it was intended to be taken away. But the taking away from the husband the usufruct during the joint lives of lands conveyed to husband and wife would not be inconsistent with the continuance of tenancies by entireties, provided the common-law right to the usufruct was not an incident of the tenancy, but of the marital right operating upon property so held, as upon all other real property of the wife. The grand characteristic which distinguishes a tenancy by the entirety from a joint tenancy is its inseverability, whereby neither the husband nor the wife, without the assent of the other, can dispose of any part of the estate so as to affect the right of survivorship in the other. (1 Bl. 182; Wash. on Real Prop. 425.) Each is said to be seized of the whole estate, and they do not take by moieties, and the reason assigned in the old books for this anomalous characteristic of this estate is the legal unity of the husband and wife, and the incapacity of the wife to hold a separate and severable estate in lands under a joint conveyance to both. The alleged incapacity of a wife to take and hold lands conveyed to husband and wife as joint tenant or tenant in common with him seems inconsistent with the doctrine which has finally obtained, that by express words of a grant or devise to husband and wife that species of tenure would be created. This was pointed out in *Miner* v. *Brown* (133 N. Y. 308), and authorities were cited to show that where the intention disclosed by the deed or will was to create a tenancy in common that estate would be created. (See, also, *McDermott* v. *French*, 15 N. J. Eq. 78; *Wales* v. *Coffin*, 13 Allen, 213; 1 Wash. on Real Prop. 425.) There is a tendency now to regard the creation of an estate by the entirety as resting upon a rule of construction rather than upon a rule of law, and to regard the intention as disclosed by the deed or will creating it as the

governing rule for determining whether that estate was created rather than a joint tenancy or tenancy in common. (See *In re March*, 27 Ch. Div. 166, and cases before cited.) It was conceded under the old law that husband and wife, who were joint tenants or tenants in common of lands before marriage, remained so afterwards. (Coke on Litt. 187b.) It would seem to follow that there was no general incapacity in the wife to hold lands with the husband in joint tenancy or as tenant in common. The quality of the estate held by husband and wife as tenants by the entirety, in the aspect of its inseverability, has been adverted to. But it is important in view of the subsequent discussion to observe that the wife, as well as the husband, took an estate under a grant to both. Each was said to be seized of the whole, and not of any separate part. Neither could convey his or her interest to the prejudice of the right of survivorship in the other. The common law, however, wholly ignored this principle of equality between husband and wife in regulating the rights of the parties to the enjoyment of the estate during the joint lives. They were not regarded as having a joint seizin or a joint possession for the purpose of the use during coverture. The husband was held to be entitled to the full control and to take the rents and profits of the land during the joint lives to the exclusion of the wife, and he had power to sell, mortgage or lease for the same period, and this life interest was, according to the weight of authority, subject to the claims of his creditors. (*Barber* v. *Harris*, 15 Wend. 615; *Jackson* v. *McConnell*, 19 id. 175; *Meeker* v. *Wright*, 76 N. Y. 262; *Bertles* v. *Nunan*, *supra*; *Ames* v. *Norman*, 4 Sneed, 683; *Pray* v. *Stebbins*, 141 Mass. 219.) But the right of the husband at common law to take the rents and profits of lands held by him and his wife as tenants by the entirety, during coverture, and to assign and dispose of them during that period, did not, we apprehend, spring from the peculiar nature of this estate. He acquired no such right by force of the conveyance itself, and it was not an incident thereto. It was a right which followed the conveyance and inured to the hus-

band from the general principle of the common law which vested in the husband *jure uxoris* the rents and profits of his wife's lands during their joint lives. (2 Kent Com. 130; Stewart on Husb. & Wife, § 308.) The husband took the rents and profits of lands held in entirety upon the same right that he took the rents and profits of her other real estate, whether held by a sole or joint title, namely, his right as husband. In none of the definitions of tenancies by entireties have we found any suggestion that this was one of the incidents or characteristics of such estates, and we think it is plain, both upon reason and analogy, that it had its origin in those harsh principles of common law which destroyed for most purposes the legal identity of the wife and subjected her person and property to the control of her husband.

In considering what effect, if any, the legislation in this state has had upon the right of the husband to the rents, profits and control of lands held by him and his wife in entirety, during their joint lives, it is important to regard not only the language, but the spirit of the new enactments. The sole purpose of the original statute of 1848 was to secure to married women the enjoyment of their real and personal property which belonged to them at the time of their marriage, or which they might thereafter acquire by gift, grant or bequest from third persons, and to abrogate the common-law right of the husband in and to the real and personal property of the wife. The right to the rents and profits of her lands *jure uxoris*, during the joint lives, was completely swept away, not by express enactment, but as a necessary consequence of investing her with the beneficial use of her own property, free from his control. Subsequent legislation confirmed her rights as defined by the act of 1848, and enlarged them in other directions, but the act of 1848 was the seed from which all the subsequent legislation sprung. This legislation rendered unnecessary any longer the cumbrous mechanism of settlements or resort to the imperfect powers of Courts of Chancery to secure to married women the enjoyment of their own property.

In determining the question now before us, too much empha-

sis cannot be placed upon the fact that the legislation of 1848
and the subsequent years uprooted the principle of the common
law, hoary with age, which vested in the husband, by virtue of
the marriage relation, control of the property of his wife and
the right to exclude her from its enjoyment.    If it is still held,
notwithstanding this legislation, that the husband takes the
whole rents and profits during coverture in lands held in
entirety, and may exclude the wife from any participation
therein, an exception is allowed, standing upon no principle,
and it deprives the wife, although she has an undoubted
interest and estate in the land, from any benefit thereof dur-
ing the lives of both.    There are, as we can perceive, but two
other alternatives.    Either the rents and profits follow the
nature of the estate, and can neither be disposed of nor
charged except by the joint act of both husband and wife,
which seems to be the view taken in *McCurdy* v. *Canning*
(64 Pa. St. 39), or the parties become tenants in common or
joint tenants of the use, each being entitled to one-half of the
rents and profits during the joint lives, with power to each to
dispose of or to charge his or her moiety during the same
period, which seems to be the view taken in *Buttlar* v. *Rosen-*
*blath* (42 N. J. Eq. 651).    We think the rule adopted in New
Jersey best reconciles the difficulties surrounding the subject.
The estate granted is not thereby changed.    It leaves it
untouched, with all its common-law incidents.    It deals with
the rents and profits and the use and control of the estate dur-
ing coverture only, and gives to each party equal rights so
long as the question of survivorship is in abeyance, thereby
conforming to the intention of the new legislation to take
away the husband's right *jure uxoris*, in his wife's property,
and to enable the wife to have and enjoy "whatever estate
she gets by any conveyance made to her or to her and others
jointly, and does not enlarge or diminish that estate."    The
rule in Pennsylvania not only deprives the husband of his
common-law right to the enjoyment of the whole rents and
profits, but of the enjoyment of any share thereof, except
with the concurrence and permission of his wife.

The conclusion we have reached requires a reversal of the judgment below so far as it adjudges that the mortgage executed by the husband to the plaintiff, and the sale thereunder, vested in the plaintiff the right to the possession of the whole estate during the joint lives of Mr. and Mrs. Fisher. The husband had a right to mortgage his interest, which was a right to the use of an undivided half of the estate during the joint lives and to the fee in case he survived his wife, and by the foreclosure and sale the plaintiff acquired this interest and became a tenant in common with the wife of the premises subject to her right of survivorship. The opinion of the General Term exhibits, with great clearness, the reasons upon which it was held that a conveyance or mortgage by the husband, without restrictive words, binds the fee in case he survives the wife. (See 1 Wash. Real Prop. 425 ; 1 Prest. Est. 135 ; Ames v. Norman, supra.)

The judgment below should be modified in accordance with this opinion, and, as modified, affirmed, without costs to either party.

All concur, except Haight, J., not sitting.

Judgment accordingly.