---

### In re OPENING OF TIFFANY ST. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 12, 1903.)

1. STREETS—CHANGE OF GRADE—ESTOPPEL TO CLAIM DAMAGES.

To work an estoppel on landowners who have constructed buildings fronting on a street, so as to preclude them from the recovery of damages sustained by reason of a change in grade, the proof ought to be clear and conclusive of the existence of facts charging them with notice of the intended regulation and change of the grade.

2. SAME—FILING MAP SHOWING GRADE—DELAY IN MAKING IMPROVEMENTS.

A city cannot file a map giving notice of the intended regulation and grade of a street, and then lie by for a long period of years without making the intended improvement, and yet deprive landowners of the right to make improvements except at peril of loss.

3. SAME—FAILURE TO CLAIM DAMAGES—EFFECT.

While it is for the interest of the landowner to appear before the commissioners of estimate and assessment and give proof of the damage sustained on account of the opening and grading of a street, his failure to do so does not deprive him of the amount to which the law entitles him; and if he has suffered damages, and the commissioners make no award, he would have the right to object to the confirmation of their report.

Appeal from Special Term, New York County.

In the matter of the opening and grading of Tiffany street, in the city of New York. From an order confirming the final separate and partial report of the commissioners of estimate and assessment, the city appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John P. Dunn, for appellant.
Barclay K. V. McCarty, for respondents.

HATCH, J. This proceeding was instituted under the provisions of the former consolidation act to acquire title to the land known as "Tiffany Street," from Longwood avenue to Intervale avenue, in the city of New York. The respondents do not claim to own any of the fee of the land taken for the street, and the damages claimed relate solely to that sustained by the intended grade of the street; it being shown that a deep cut would be made in front of some of the buildings, and a high fill in front of others. The buildings claimed to have been damaged, and for which awards have been made, are situate on the easterly side of Tiffany street, between 165th and 167th streets. It appeared upon the hearing that on June 2, 1879, there was filed by predecessors in title a private map showing the land upon which these buildings were erected, and an additional quantity of land adjacent thereto. This map is called in the record the "Lyman Tiffany Map." It shows the location of Tiffany street, but there is nothing appearing thereon to show the establishment of any grade. While reference is made in the case to other grade maps of the Twenty-Third and Twenty-Fourth Wards of the city of New York, filed in the office of the commissioner of street improvements on January 18, 1894, and in the office of the register of the city and county of New York on January 19, 1894, and in the office of the Secretary of State of the state of New York on January 20, 1894, yet these maps do not appear to have been introduced in evidence, nor do they appear in the present record. Only one grade map was offered in evidence, and it appears to have been filed as a public record about January 25, 1900. It embraced a much greater extent of territory than is affected by the present proceeding. On his grade map are shown the natural surface of the street, the intended regulation of the grade established at that time, and also an intended regulation or grade established in 1879; but it nowhere appears in the records that any map was filed as a public record in the year 1879, or prior to the filing of the map of 1900, except those above referred to. Although this grade map shows that the grades of the street were finally established in the year 1894, there is nothing in the record of the case to show that this establishment of the final grade was made public until the filing of this map, except as reference is made to the maps above referred to. The buildings in question were all erected at different times from 1886 to February, 1894, and all of them prior to the filing of the grade map introduced in evidence.

It is contended upon the part of the city that the respondent owners are not entitled to any award of damages, for the reason that it appears that the grade established in 1879 was precisely the same grade as that confirmed and referred to in 1894, and that, as the buildings were constructed subsequent to this time, no award of damages can be made therefor. The respondents' contention is that they had no

public notice of the establishment of any grade until the filing of the profile map of 1900, and that, as they had no notice of the intended regulations and grade, the damages have been properly awarded.

It is readily apparent that there is much force in the contention of the owners of the buildings. The proof appearing in the present record is quite doubtful as to the existence of any proof, of which the landowners were bound to take notice that the intended regulation and grade of the street were finally and absolutely fixed and determined prior to January, 1900, when the grade map finally and permanently fixing the intended regulation and grade was filed. To work an estoppel upon landowners who have constructed buildings fronting upon the street, so as to preclude them from the recovery of damages which they have sustained by reason of the changed grade of the street, the proof ought to be clear and conclusive of the existence of facts charging them with notice of the intended regulation and change of the grade. The landowner ought to have an opportunity to make a profitable use of his land, and to make improvements thereon which will be beneficial to him; and, if the action of the city will deprive him of such beneficial use, it is incumbent upon it to give fair notice of the changes it contemplates making, affecting materially the value and use of the lands; otherwise an owner might make valuable improvements upon his land, only to find himself ruined by the action of the city in depriving him of the beneficial use of the improvements; and, while the owner makes improvements with notice of the intended regulation and grade at his peril, he ought not to be deprived of the right of use of the land by doubtful information upon such subject. Nor can the city file a map giving notice of the intended regulation and grade, and then lie by for a long period of years without making the contemplated improvement, and deprive the owner of making use of his land, at peril of loss. Such condition was in contemplation by this court when it decided Matter of Rogers Place, 65 App. Div. 1, 72 N. Y. Supp. 459. There it was said:

"It may very well be in some cases that the mere filing of a map by the municipal authorities would not now be held to operate as a prohibition upon the owners, in erecting buildings on their land, to conform to natural grades, for proceedings might not be taken to open streets for decades after the filing of the maps."

The question arising under such circumstances was adverted to, and determination reserved, in Matter of East 187th Street, 78 App. Div. 355, 79 N. Y. Supp. 1031.

In the present case nothing was done, so far as appears, between 1879 and 1896, when commissioners were appointed—a period of 17 years—and 20 years elapsed between the claimed establishment of the grade and the filing of the final grade map. We do not think that it would be equitable to deprive the landowners of making use of their land during this long period of time, at the peril of having any improvements they might make thereon destroyed or damaged, and they be left remediless. The filing of the maps showing the intended regulation and grade is not conclusive in all cases, nor ought it to be, as great injustice may be worked in particular cases. The rule governing the question upon this subject is expressed in our former decisions.

In Matter of East 187th Street, supra, the question was left open as to the effect of omitting to file claims for damage at the time when the notice required they should be presented, as it was not essential to a decision in that case. The same question is presented, however, for determination, in this case, and is involved therein. The commissioners appointed are required by law to estimate and assess all the damages sustained. This they would be required to do whether the landowner appeared or not. They are required to view the premises and make a fair and just assessment, and, while it is for the interest of the landowner to appear and give proof of his claim for damages, yet his failure so to do does not deprive him of the award to which the law entitles him; and if he has suffered damage, and the commissioners make no award, he would have the right to appear and object to its confirmation, for under such circumstances the commissioners would not have properly performed the duties devolved upon them by law, and in such case the right of the landowner to appear and object would be clear, even though he had not heeded the notice. The failure, therefore, to appear, does not estop the landowner from subsequently objecting to the confirmation of the report. Appearing at such time, however, the duty devolves upon him of showing that he is aggrieved by the action of the commissioners, and that they have not properly performed their duties. The mere failure to appear does not work an estoppel, and the question presented must be determined, where opposition is made to the confirmation of the report, by the exercise of the sound discretionary power of the court. The awards in the present case do not appear to be excessive or unreasonable, and the landowners appear to be fairly entitled thereto.

It follows that the order appealed from should be affirmed, with $10 costs and disbursements. All concur, PATTERSON, J., in result.

Ingraham and McLaughlin, JJ., dissenting.

