### PEOPLE ex rel. BENNETT v. DICKEY et al.

(Supreme Court, Appellate Division, First Department. January 19, 1912.)

1. MUNICIPAL CORPORATIONS (§ 398*) — PUBLIC IMPROVEMENTS — STREETS — CHANGE OF GRADE—DAMAGES.

Under Laws 1893, c. 537, § 6, requiring award to abutters on change of a street grade of just and equitable relief, etc., an owner is entitled to damage done to houses, though he acquired title and erected the houses after the map showing the proposed change of grade was filed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where the grade was not physically changed for 15 years, nor until five years after he acquired title and erected the houses.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 953–957;  Dec. Dig. § 398.*]

2. MUNICIPAL CORPORATIONS (§ 398*) — PUBLIC IMPROVEMENTS — STREETS — CHANGE OF GRADE—DAMAGES.

Damages to property caused by change of street grade in 1886 did not accrue then, but at the time of the adoption of Laws 1893, c. 537, § 6, which first provided for award of such damages, and hence, since the owners held as tenants by the entirety, and the wife died in 1892, the husband as survivor became entitled to an award for the whole damage.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 953–957;  Dec. Dig. § 398.*]

Certiorari by the People of the State of New York, on relation of Abraham Bennett, as John Bennett's executor, against William D. Dickey and others, Commissioners, under chapter 537, Laws 1893, as amended by chapter 567, Laws 1894, chapter 747, Laws 1905, and other acts, and the City of New York, to review an award to relator for change of grade damages.  Writ sustained, and proceeding remitted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

James B. Mitchell, for relator.
Clarence L. Barber, for defendants.

SCOTT, J.  [1] This is a certiorari to review an award made by defendant, known as the "change of grade commission."  The property affected is situated on the southerly side of East 149th street, and consists of a parcel of land with two buildings thereon.  This property was acquired in 1881 by relator's testator, John Bee, and Elizabeth Bee, his wife, as tenants by the entirety, and was so held by them until April, 1892, when Elizabeth Bee died, and her husband, who survived her, became the sole owner.  The map showing the proposed change of grade was filed February 21, 1871, before John Bee and his wife acquired title; but the grade was not physically changed until July, 1886, 15 years after the map had been filed and 5 years after John Bee and his wife had acquired title and erected houses on the lot.  The commissioners have awarded damages only for the damage done to the lot by the change of grade, and have refused to allow anything for damages to the houses, and, of the damages found, have awarded only one-half to relator's testator.

We are of opinion that the defendants erred, both in refusing to consider the damage done to the houses by the change of grade, and in awarding to relator's testator only one-half of the amount of damage suffered by the lot.  The question whether or not an owner of land who has erected a house, after the filing of a map showing a proposed change of grade and before the change is actually made, should be allowed for the damage done to his building, has been the subject of some difference of opinion.  In Matter of Rogers Place,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

65 App. Div. 1, 72 N. Y. Supp. 459, while under the circumstances of that case such damages were refused, the court said:

"It may very well be in some cases that the mere filing of a map by the municipal authorities would not now be held to operate as a prohibition upon owners erecting buildings upon their land to conform to natural grades, for proceedings might not be taken to open streets for decades after the filing of maps."

In Matter of Tiffany St., 84 App. Div. 525, 82 N. Y. Supp. 852, the court had to deal with a case in which it was left doubtful whether such a map had been filed as to give constructive notice to the owner of an intended change of grade. It was held that an owner could not be denied damages to buildings by reason of doubtful information as to an intended change of grade, and the court further said:

"Nor can the city file a map giving notice of an intended regulation and grade and then lie by for a long period of years without making the contemplated improvement and deprive the owner of making use of his land at peril of loss."

In Matter of Briggs Avenue, 196 N. Y. 255, 89 N. E. 814, the Court of Appeals was called upon to consider the claim of an owner who had erected a building upon his land after proceedings had been begun to condemn it for a public street. His claim was rejected because it was found that he had acted in bad faith (of which there is no suggestion in the present case). The court held, however, that where there was no question of good or bad faith, a property owner is entitled to make the ordinary use of his land even between the commencement of condemnation proceedings and the final order vesting title in the city.

In Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543, the Court of Appeals condemned as unconstitutional section 677 of the New York City Consolidated Act (chapter 410, Laws 1882), which provided that in street opening proceedings no allowance should be made for any building erected upon the land to be taken after the filing of the map showing the intended appropriation of the land for street purposes. This case, of course, is not decisive of the present question, for the change of grade does not involve the taking of any property, and therefore no constitutional question is involved. The reasoning of the court, however, is instructive. It was, in effect, that to restrict or limit the free use of property is equivalent to taking property, for:

"All that is beneficial in property arises from its use and the fruits of that use, and whoever deprives a person of them deprives him of all that is desirable or valuable in the title or possession."

The defendants are required by statute to award claimants "such relief as in their judgment is just and equitable in view of the circumstances of each case brought before them, * * * and shall determine what relief, if any, is to be awarded in respect of each lot or parcel of land with the buildings and improvements thereon, if any, and what award, if any, is to be allowed as damages upon such lot or parcel." Chapter 537, Laws 1893, § 6. The actual damage is done, and the consequent loss incurred, when the physical change of grade

takes place, and the damage should be estimated as of that time, unless there are peculiar circumstances, not present in this case, which would render it inequitable so as to estimate it. To hold otherwise would be in effect to hold that the damage was wrought, or at least begun, by the filing of a map showing the intended change of grade. If after such filing the owner was debarred, except at his own peril, from improving the property, his damage should, in equity, include an allowance for the loss of its use between the date of filing the map and the date of the physical change. But the more equitable and certain rule is to award damages to the property as it exists when the physical change is effected.

[2] The other question inviting our attention is as to what proportion of the damage done to the property should have been awarded to relator's testator.

As has been said, John Bee and his wife owned the property as tenants by the entirety when the buildings were erected, and when the physical change of grade was effected, and consequently so held it when the property was injured by the change of grade. At that time, however, there was no provision of law by which these damages could be recovered, and whatever injury was done to the property was "damnum absque injuria," and so it continued until after the death of Mrs. Bee in 1892. When she died, the whole estate, in its condition of impaired value, passed to her husband as survivor. No right to compensation for damage ever vested in her, and consequently none could have passed to her personal representative. The act providing for compensation was passed by the Legislature ex gratia in 1893, and then for the first time had any one a right to recover compensation. It was inaccurate to say that this right accrued in 1886 when the grade was changed. It accrued when the act was passed, although the damages were suffered in 1886. The title by which the property was held when the grade was changed was peculiar and has a direct bearing upon the present question. John Bee and his wife did not hold as tenants in common or as joint tenants, but each was seised of the entirety, "per tout et non per my," and upon the death of either the whole survived to the other; but the survivor took the estate, not by virtue of survivorship simply, but by virtue of the grant which vested the entire estate in each grantee. Bertles v. Nunan, 92 N. Y. 152, 44 Am. Rep. 361. John Bee was therefore the owner of the entire estate when the damage was done to the property, as well as when the act was passed providing for compensation, and consequently, his wife having died, was entitled to an award for the whole damage. And this is just and reasonable, because the estate came to him, not through his wife, but through the original grant, impaired in value by reason of the change of grade.

We see nothing contrary to this view in Hiles v. Fisher, 144 N. Y. 306, 39 N. E. 337, 30 L. R. A. 305, 43 Am. St. Rep. 762. All that was held in that case was that since the married women's acts the husband is no longer entitled to enjoy the sole use of the usufruct of real estate held by the entirety, but that as to such property the husband and wife are tenants in common or joint tenants of the use;

each being entitled to one-half of the rents and profits so long as the question of survivorship is in abeyance. The damages awarded for a change of grade are in no sense rents and profits or usufructs. They are given as the equivalent for a diminution in the value of the estate itself. The other objection raised by the relator is without merit and calls for no comment.

It follows that the writ must be sustained and the proceedings remitted to the defendants for determination upon the principles hereinbefore laid down, with $50 costs and disbursements to the relator. All concur.

---

## H. G. VOGEL CO. v. GEORGE BACKER CONST. CO.

(Supreme Court, Appellate Division, First Department.   January 19, 1912.)

DISCOVERY (§ 40*)—EXAMINATION OF ADVERSE PARTY BEFORE TRIAL—GROUNDS.
   Where an application for examination of a defendant stated that the examination was desired for the purpose of avoiding and defending counterclaims, and the affidavit stating the facts which the plaintiff expected to prove stated facts exactly opposite of those contained in defendant's verified answer, the application would be refused as not in good faith.

   [Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 52, 53; Dec. Dig. § 40.*]

Appeal from Special Term, New York County.