Owen G. Clark, as Receiver of the First National Bank of Franklin, Plaintiff, *v.* Edwin C. Rowell and Others, Defendants.

County Court, Delaware County, July 15, 1937.

*Arthur E. Conner* [*Paul F. Eaton* of counsel], for the plaintiff.

*Edwin A. Mackey,* for the defendants Edwin C. Rowell, individually and as executor of Emma W. Rowell, deceased, and Mildred Payne Rowell.

*George Bockes,* for the defendants Mahlon W. Rowell, Mary Johnson, Martha Hovey and Glenn L. Rowell.

O'CONNOR, J. This is an action to foreclose a purchase-money mortgage for $5,500 made and executed by Arthur W. Rowell to Edwin Taylor, dated February 27, 1911, recorded in Delaware county clerk's office, March 3, 1911, on premises situate in the town of Franklin, Delaware county, N. Y. Said mortgage is hereinafter referred to as the Taylor mortgage. On September 1, 1920, said Edwin Taylor assigned this mortgage to Avice A. Rowell, who on July 3, 1923, assigned the same to James E. Payne, Sr., the latter being the father of the defendant Mildred Payne Rowell. Grace Payne Harris, as executor of James E. Payne, Sr., deceased, assigned this mortgage to the defendant Mildred Payne Rowell, at which time there was $2,300 of principal only unpaid thereon. This assignment was dated June 13, 1929, but evidently was **not**

executed until September 4, 1929, as that is the date of the acknowledgment, and it was not recorded until November 19, 1929. No payments of principal or interest were made on this mortgage after its assignment to Mrs. Rowell. On February 27, 1935, the defendant Mildred Payne Rowell assigned this mortgage to the First National Bank of Franklin to secure three notes which had been discounted by said bank. One note was dated April 6, 1933, payable to O. A. Shaw, for $990, two months after date, with interest, signed by the defendants Edwin C. Rowell and Mildred Payne Rowell and indorsed by O. A. Shaw, on which there was due and unpaid at the time of the trial of this action the sum of $522.61 of principal and $135.12 interest; this was a renewal and the original of this note was given in 1927 and the proceeds thereof used to repair the barn on the premises in question. The second note was dated July 6, 1933, made payable to John Taggart for $1,540 one month after date, with interest, signed by the defendants Edwin C. Rowell and Mildred Payne Rowell, indorsed by John Taggart, on which there was due and unpaid at the time of the trial of this action the sum of $1,537 of principal and $339.44 interest. The original of this note was given to John Taggart in 1928 for $1,540 and the proceeds used to purchase cows to place upon the premises in question. The third note was dated July 6, 1933, made payable to the defendant Mildred Payne Rowell for $340, one month after date, with interest, signed by Edwin C. Rowell and indorsed by Mildred Payne Rowell, on which there was due and unpaid at the time of the trial of this action the sum of $337 of principal and $74.44 interest; the original of this note was executed by Edwin C. Rowell to James E. Payne, Sr., and on his death the defendant Mildred Payne Rowell indorsed it in place of her father, James E. Payne, Sr. The total amount due and unpaid at the time of the commencement of this action on the said three notes was $2,945.61. At the time of the trial there was due and unpaid on the Taylor mortgage $2,300 of principal, with interest at five per cent from June 13, 1929, amounting to $899.22, making the total amount $3,199.22 unpaid. After the Taylor mortgage was assigned by the defendant Mrs. Rowell to the First National Bank of Franklin both the plaintiff and defendants Mr. and Mrs. Rowell tried to sell it and apply the proceeds on the payment of the above-mentioned notes.

Emma W. Rowell, mother of the defendant Edwin C. Rowell, acquired title to the premises mentioned and described in the Taylor mortgage prior to October 1, 1921, and on that date conveyed said premises to the defendants Edwin C. Rowell and Mildred Payne Rowell, his wife, as tenants by the entirety, subject to the

Taylor mortgage. On the same day the defendants Edwin C. Rowell and Mildred Payne Rowell executed and delivered to said Emma W. Rowell a mortgage on said premises for $6,730, which said mortgage will be hereafter referred to as the Rowell mortgage. On June 26, 1933, Emma W. Rowell died testate, leaving a will which was duly probated July 31, 1933, in which she gave her estate in equal parts to her children, the defendants Edwin C. Rowell, Mahlon Rowell, Mary Johnson, Martha Hovey and Glenn L. Rowell, and letters testamentary were issued to Edwin C. Rowell. At the time of her death she was the owner of the Rowell mortgage. All the above instruments were duly recorded.

At the trial the defendants Mahlon Rowell, Mary Johnson, Martha Hovey and Glenn L. Rowell asked and were granted leave to appear in the action, be made parties thereto and interpose a separate answer.

The First National Bank of Franklin became insolvent July 21, 1933, and on that date Lee McCook was duly appointed receiver of said bank by the Comptroller of Currency of the United States. Melvin C. Bundy was appointed as successor to Mr. McCook and served from May 23 to June 30, 1926. On the last-mentioned date the plaintiff Owen G. Clark was appointed and entered upon the discharge of his duties as receiver of said bank and is still acting as such.

All of the defendants plead as a defense to the foreclosure of the mortgage that the Taylor mortgage when it was assigned to Mildred Payne Rowell merged with the title to the premises which was then in Mildred Payne Rowell and Edwin C. Rowell as tenants by the entirety, as a matter of law and by reason of an agreement which they alleged was made between Mr. and Mrs. Rowell and the other legatees of Emma W. Rowell, viz., Mahlon Rowell, Mary Johnston, Martha Hovey and Glenn L. Rowell, that the Taylor mortgage should merge and the Rowell mortgage should become a first mortgage and lien upon the premises in question.

A merger takes place whenever a greater and a lesser estate meet in one and the same person, without an intermediate estate, in which case the lesser of the two estates is immediately swallowed up in the larger. Equity, however, does not look with special favor upon such absorption, and not being bound by the legal rule of merger, will treat the two estates as separate and individual, if the intention of the parties to preserve them as such is apparent and justice requires it. (*Curtis* v. *Moore*, 152 N. Y. 159, at p. 165; *Asche* v. *Asche*, 113 id. 232, 235; *Smith* v. *Roberts*, 91 id. 470, at p. 475.) Merger in equity is, also, subject to the condition that it will not prejudice the rights of third parties. " A court of equity,

says Chancellor KENT, ' will keep an encumbrance alive or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party. It must be an innocent purpose and injurious to no one.' " (*Clift* v. *White*, 12 N. Y. 519, at p. 536; *Weis* v. *Levy*, 106 App. Div. 496.)

The purpose and intent of the parties will be gathered, not only from their acts and declarations, but also from the situation as it affects their interest, before the right of any third person intervenes. (*Smith* v. *Roberts, supra*, at p. 475.) Usually the intention of the parties is manifested at the time when the owner of the fee becomes the owner of the mortgage or *vice versa.*

In order that there may be a merger it is necessary that the person or persons become seized of the entire property liable to pay the debt and the whole debt. Where the owner of a mortgage becomes devisee, or heir, as tenant in common of an undivided interest in the mortgaged land, the two estates do not become united so as to discharge any portion of the mortgaged debt. (Thomas Mort. [2d ed.] § 367; *Sahler* v. *Signer*, 44 Barb. 606; *Delaware National Bank of Delhi* v. *Wiss*, 158 Misc. 276.)

It necessarily follows that the contrary of this proposition is also true, that where a tenant in common of the mortgaged land becomes the owner of a mortgage on the whole property, the two estates do not merge so as to discharge any portion of the mortgage debt.

The first question to determine is whether as a matter of law and equity, when Mrs. Rowell became the owner of the Taylor mortgage, it merged with the title which she and the defendant Edwin C. Rowell, her husband, held, as tenants by the entirety.

Tenancy by the entirety vests in both the grantees the ownership to the property as one person. They hold the estate while both are living under one title and upon the death of the husband or wife, the survivor is the owner under that title. Upon the vesting of an estate by entirety both tenants by reason of the unity of their person by marriage, become seized of the whole estate and neither is seized of any divisible part thereof; and, therefore, upon the death of one, the survivor, being already seized of the whole, can acquire no new or additional interest by virtue of his survivorship. (*Hiles* v. *Fisher*, 144 N. Y. 306; *Matter of Klatzl*, 216 id. 83.) While a husband and wife as tenants by the entirety become vested of the title to the whole property at the time of the conveyance to them of such, yet each has a title which cannot be divested by the other. If a husband gives a mortgage upon the premises held by himself and wife as tenants by the entirety, the mortgage is not a lien upon the wife's interest. On foreclosure the

purchaser, if the wife be alive at the time of the sale, obtains the husband's interest which is subject to her right of survivorship, with the right to use an undivided half of the land during the joint lives of the husband and wife; if she survives she is entitled to the entire estate. (*Hiles* v. *Fisher, supra.*) A purchaser of premises held by tenants by the entirety under an execution issued upon a judgment against one of them would obtain the same title. (*Lopez* v. *McQuade*, 151 Misc. 390.) Where the owner of premises subject to a mortgage takes an assignment of the mortgage at a time when his mother has an unadmeasured dower interest there is no merger (*Thorburn* v. *Wende*, 235 App. Div. 424; *Brendt* v. *Brendt*, 25 Misc. 359.)

It necessarily follows that the interest of the defendant Edwin C. Rowell as tenant by the entirety prevented a merger here as a matter of law. Unless there was competent proof of an express intention or agreement on the part of Mrs. Rowell that the mortgage should merge with the title or equity required it, no merger would take place.

Defendants sought to prove such an agreement and intention by the testimony of Mr. and Mrs. Rowell and some of the other defendants to the effect that Mr. and Mrs. Rowell in conversations had with some of the other defendants stated, after she had acquired the Taylor mortgage, that that mortgage should merge and the Rowell mortgage should become a first mortgage upon the premises.

This alleged agreement would be binding upon the parties to it but is not binding upon the plaintiff, if it be a *bona fide* purchaser for value. Defendants contend that the plaintiff is not a *bona fide* purchaser for value because the assignment of the Taylor mortgage was taken from Mrs. Rowell to secure an antecedent indebtedness. Plaintiff, however, is a *bona fide* purchaser for value. (*Lehrenkrauss* v. *Bonnell*, 199 N. Y. 240.)

If the rights of third parties had not intervened, Mrs. Rowell had the right to reissue the mortgage and assign it to the plaintiff. (*Kellogg* v. *Ames*, 41 N. Y. 259.) The alleged agreement, if proven by competent evidence, would have accomplished a merger which would prevent the plaintiff from enforcing the mortgage, for an assignee in good faith and for value of a mortgage takes it, not only subject to all the equities existing between the parties to the instrument, but also to the equities which third persons could enforce against the assignor. (*Stevenson Brewing Co.* v. *Iba*, 155 N. Y. 224; *Greene* v. *Warnick*, 64 id. 220; *Owen* v. *Evans*, 134 id. 514; *Merchants' Bank of Buffalo* v. *Weill*, 163 id. 486; *Smith* v. *Roberts*, 91 id. 470; *Bush* v. *Lathrop*, 22 id. 535.)

Evidence as to this oral agreement was admitted over the objection of the plaintiff that it was incompetent and inadmissible subject to a motion to strike out, which was duly made. The evidence was inadmissible. Oral declarations or secret agreements of an assignor of a mortgage made prior to the assignment are inadmissible against the assignee to establish a defense to an action brought by him to foreclose the mortgage. (*Merkle* v. *Beidleman*, 165 N. Y. 21; *Thorburn* v. *Wende, supra; Salvin* v. *Myles Realty Co.*, 227 N. Y. 51, at p. 55; *Conkling* v. *Weatherwax*, 181 id. 258; *Curtis* v. *Moore*, 152 id. 159; *Booth* v. *Swezey*, 8 id. 276; *Smith* v. *Webb*, 1 Barb. 230.) Had the agreement been in writing it would have been admissible and would have been sufficient to establish a defense to the action, even though it had not been recorded. (*Koehnken* v. *Annunziato*, 248 App. Div. 780.) The motion to strike out this evidence is granted.

The testimony that such an agreement was made being inadmissible and incompetent, there is not sufficient evidence of an intent on the part of Mrs. Rowell that a merger should take place. The defendants urge that because no payments of principal or interest were made upon this mortgage from the time Mrs. Rowell acquired it until she assigned it to the bank is evidence of such an intent. Mrs. Rowell was the owner of the mortgage and she and her husband were owners of the property upon which it was a lien as tenants by the entirety. It is nothing unusual that no payments were made upon the mortgage under these circumstances. Mrs. Rowell took an assignment of the mortgage and not a satisfaction of it; she never executed a satisfaction of the mortgage during the time she was the owner of it nor did she execute a subordination agreement or an agreement that the mortgage should merge with the title. Under these circumstances the failure of Mr. and Mrs. Rowell to make payments is no evidence of an intent that the mortgage should merge.

Defendants urge that their rights were prejudiced because, after the alleged agreement had been made by Mr. and Mrs. Rowell with the other defendants that the Taylor mortgage should merge with the title, the property depreciated in value from between $7,000 and $8,000 in 1929 to $4,000 at the time of the trial, and that the Rowell mortgage was not foreclosed during that period because they relied upon the agreement that the Taylor mortgage was merged and the Rowell mortgage was a first lien upon the premises. The defendants having failed to establish the alleged agreement by competent testimony, their claim as to any equity arising by reason thereof which would prevent the plaintiff from foreclosing the mortgage, falls with the agreement.

The defendants also introduced testimony tending to show that at the time Mrs. Rowell assigned the mortgage to the plaintiff she did not know she was signing an assignment of the mortgage to the bank. Mr. McCook, receiver of the plaintiff at the time the assignment was executed by Mrs. Rowell, testified that the assignment was left with Mrs. Rowell overnight so she could show it to her husband, and that it was executed after she had had full opportunity to examine and know its contents. This was denied by Mrs. Rowell. Mr. McCook testified, without contradiction, that he was anxious to convert the mortgage into money and apply the proceeds upon the notes, and that he procured a purchaser of the mortgage, so notified Mr. and Mrs. Rowell and they informed him they did not want the party who was willing to purchase the mortgage to acquire the same; that thereafter Mr. and Mrs. Rowell endeavored to sell the mortgage to another person so that the proceeds might be applied upon their indebtedness to the bank. Whether Mrs. Rowell knew what she was signing when she executed the assignment or not becomes of little importance because, by consenting that plaintiff offer the mortgage for sale and by endeavoring to procure a sale thereof herself, she ratified the assignment and waived any question as to its valid execution.

The plaintiff is entitled to the usual judgment of foreclosure and sale of the premises. Judgment may be entered accordingly.