KATHERINE A. STEWART, Plaintiff, v. LEO J. STEWART, Defendant.

Supreme Court, Special Term, Bronx County, July 7, 1955.

*Samuel Bernstein* for plaintiff.

*Isidore Miller* for defendant.

MATTHEW M. LEVY, J. On this motion by the plaintiff wife to punish the defendant husband for contempt for disobedience of a court order with respect to alimony payments, the only issue in opposition worthy of note is the contention of the defendant that the plaintiff has not shown that sequestration of the defendant's property is unavailable and that therefore the motion must be denied (Civ. Prac. Act, § 1172).

As they appear from the motion papers presently presented, from those on a companion application, and from the filed papers, the facts relevant to the resolution of the issue are as follows: The action is for a separation. An order *pendente lite* was duly entered and served requiring the defendant to pay $25 weekly alimony to the plaintiff. The defendant is in arrears in the sum of $125. No security has been given by the defendant for the payment of alimony, and the plaintiff states in her moving affidavit " that sequestration proceedings would be ineffectual." The defendant is a resident of this city and State and is readily served with process. He and the plaintiff own certain real estate by the entirety. The property consists of an old farmhouse and sixty-five acres of land in Rensselaer County in upstate New York. It was purchased in April, 1949,

for $3,250, and there is a mortgage due thereon of a principal balance of about $1,000. It is claimed by the defendant to be worth between $8,000 and $9,000. Taxes, amortization and general upkeep cost about $500 per year. The property is non-income-producing. No issue is raised as to occupancy by one spouse or the other (Civ. Prac. Act, § 1164-a). And no other assets of the defendant are claimed by him to be available for sequestration.

The first question, therefore, to be considered is, does the husband have such a property right in the Rensselaer County realty as would permit of effectual sequestration? Generally, sequestration is unavailable unless there exists at the time of the issuance of the sequestration order a definite property right in the defendant (*Patterson* v. *Patterson,* 251 App. Div. 272; cf. *Fox* v. *Fox,* 276 App. Div. 859). Since this realty is owned by the parties by the entirety, the surviving spouse, upon demise of his or her mate, would become the owner of all of the property outright. But in the meanwhile, each of the parties is entitled to share, as a tenant in common, in any rents and profits accruing from the estate (*Hiles* v. *Fisher,* 144 N. Y. 306). Section 240-b of the Real Property Law provides (among other things) that husband and wife, as tenants by the entirety, may unite in a transfer to one or the other, or to a stranger; and section 56 of the Domestic Relations Law provides that husband and wife may convey to each, and make partition of, any real property held by them in common, whether the estate is held jointly or by the entireties. But compulsory partition is not available to a tenant by the entirety (*Messing* v. *Messing,* 64 App. Div. 125; *Lerbs* v. *Lerbs,* 71 Misc. 51). Yet a spouse does have such a property right in real estate so held that his interest may be conveyed by him to a third party (*Hiles* v. *Fisher,* 144 N. Y. 306, *supra*), and that interest is subject to the lien of a judgment creditor and salable upon the levy of an execution (*Finnegan* v. *Humes,* 252 App. Div. 385, affd. 277 N. Y. 682). On such transfer — whether by voluntary conveyance or by compulsory sale — the third party and the nonparticipating spouse become tenants in common, subject to the rights of survivorship of that spouse (*Hiles* v. *Fisher,* 144 N. Y. 306, 316, *supra*).

" While it is true that a tenant by the entirety may in New York convey, mortgage or lease his respective interest, the same uncertainty as to the precise interest acquired by the purchaser, not to mention the obvious practical difficulties of utilizing the interest, do not make the exercise of this power on the part of each tenant a useful solution in matrimonial cases " (1953

Report of N. Y. Law Revision Commission, p. 489). How much, then, is the husband's interest worth? Is it likely that a buyer would be found? And how soon? What would a forced sale entail? How much would it cost? What would it bring net for the support of the wife? In sum, is there, in the circumstances here, any substance to the husband's plea that the motion to punish him for contempt must necessarily be denied under the mandate of the statute?

The applicable section of the Civil Practice Act (§ 1172) provides for the " [e]*nforcement by contempt proceedings of judgment or order in action for divorce, separation or annulment.*" Its relevant portions read as follows: " Where the husband [in a matrimonial action] * * * makes default in paying any sum of money as required by the judgment or order directing the payment thereof, and it appears presumptively, to the satisfaction of the court, that payment cannot be enforced by means of the sequestration of his property, or by resorting to the security, if any, given as prescribed by statute, the court, in its discretion, may make an order requiring the husband to show cause before it at a time and place therein specified why he should not be punished for his failure to make the payment; and thereupon proceedings must be taken to punish him, as prescribed in article nineteen of the judiciary law for the punishment of a contempt of court other than a criminal contempt, and where the judgment or order directs the payment to be made * * * at stated intervals, failure to make such single payment * * * [subjects the husband to punishment]. * * * Such order to show cause may also be made without any previous sequestration or direction to give security where the court is satisfied that they would be ineffectual. No demand of any kind upon the husband shall be necessary in order that he be proceeded against and punished for failure to make any such payment * * *; personal service upon the husband of an uncertified copy of the judgment or order under which the default has occurred shall be sufficient."

It is to be noted that, as worded, the statute seems to distinguish between what is jurisdictionally required to be presented to the court so that (on the one hand) an order to the husband that he show cause before the court why he should not be punished for contempt might be issued and (on the other) so that a final order could be made by the court adjudicating the husband in contempt. In the first instance — that of the order to show cause — there must be submitted to the justice (acting ex parte in directing the husband to show cause) both the *fact*

of default in compliance and the *presumption* that payment cannot be enforced by means of the sequestration of the husband's property. In the second instance — that of the final order (made in the contested proceeding) — while the wife must, of course, still prove the *fact* of default, she is not required to prove the stark *unavailability* of sequestration. The statute envisages, it seems to me, these features: If the wife can readily invoke the remedy of feasible sequestration, she should proceed in that area before subjecting the husband to the harassment of a contempt charge. But, in any case, there is expected to be prompt compliance by the husband with his responsibilities; and if the husband's defensive suggestion of likely sequestration be substantially ineffectual, he will not be permitted to hide behind the cloak of the naked technique of this remedy before being compelled, on pain of a holding in contempt, to comply with the mandate of the court. In short, on a motion to punish for contempt for disobedience of a court order directing support payment by the husband, whatever must be shown presumptively in the first instance to start the judicial machinery in motion (*Haas* v. *Haas*, 197 App. Div. 619, 622–623; *Uttal* v. *Uttal*, 140 App. Div. 255), the actual presence or absence of possible and effective sequestration is not a definitive issue to be resolved on the merits before the machinery can be productive of results implicit in the fact and law of matrimony. (But see *Conklin* v. *Conklin* [No. 2], 125 App. Div. 280, and cf. *People ex rel. Allen* v. *Wagner,* 117 Misc. 526.)

Certainly, there is some semblance of justice in support of the contention that a guiltless wife and/or an innocent child of the parties should not be compelled, either privately or as a public charge, to be ill-fed, ill-housed or ill-clothed (with a court decree extant imposing certain responsibilities in that regard upon husband and/or father) — pending a determination, not merely of disobedience and capacity to obey, but of an issue — at once dilatory and frustrating — as to whether there is in fact, in any case, futility or effectualness in the remedy of sequestration. Particularly is that so in a situation where the husband can himself dispose of the property claimed by him to be subject to sequestration, perhaps to better personal and economic advantage than by way of a forced judicial receivership, and himself utilize the proceeds of the voluntary sale to comply with his marital and parental obligations, as precisely formalized in judicial determination and mandate. The statute does not mean, to me at least, that where there appears to be available no more than an ineffective or cumbersome or delayed

sequestration procedure — invoked by the husband as an excuse rather than as a genuine reason for disobedience — the wife must first be shunted to the hopeless utilization and exhaustion of that slight remedy, before she will be accorded the meaningful caveat of prospective punishment for continued disobedience. For it is now well recognized that after nonsupport, notice, contest, deliberation, direction, disobedience, notice, contest, deliberation, adjudication and fine, there is still usually granted the opportunity to errant husband and neglectful father of purging himself of the contempt by way of installment compliance. I would take it, therefore, that the requirement of preliminary sequestration was intended by the Legislature to be a shield to protect a Milquetoast husband from the venom of a vindictive wife; it was not intended to be a sword which the deliberately contumacious husband might use to destroy the effectiveness of a solemn judicial decree directing him to support his neglected wife or his abandoned child.

There are two other sections of the Civil Practice Act which have been suggested as relevant to a disposition of this application — sections 1171 and 1171-a. The latter section (1171-a) provides, in part, that the court may direct " the sequestration of his [the husband's] property, both real and personal and whether tangible or intangible, within the state, and may appoint a receiver thereof, or by injunction or otherwise take the same into its possession and control. The property thus sequestrated and the income therefrom may be applied in whole or in part and from time to time, under the direction of the court and as justice may require, to the payment of such sum or sums as the court may deem it proper to award, by order or judgment as the case may be, and during the pendency of the action or at the termination thereof, for the education or maintenance of any of the children of a marriage, or for the support of the wife, or for her expenses in bringing and carrying on said action and the proceedings incidental thereto or connected therewith; and if the rents and profits of the real estate, together with the other property so sequestrated, be insufficient to pay the sums of money required, the court, upon such terms and conditions as it may prescribe, may direct the mortgage or sale of sufficient of said real estate to pay such sums."

But it should be further noted that this section, by its express terms, is limited to cases where the defendant " is not within the state, or cannot be found therein, or is concealing himself therein, so that process cannot be personally served upon him ". That is not this case. Section 1171 alone is applicable here, and

it provides that the court may, in certain circumstances, "cause his [the husband's] personal property and the rents and profits of his real property to be sequestered, and may appoint a receiver thereof. The rents and profits and other property so sequestered may be applied, from time to time, under the direction of the court, to the payment of any of the sums of money specified in this section, as justice requires; and if the same shall be insufficient to pay the sums of money required, the court, on application of the receiver, may direct the mortgage or sale by the receiver, under such terms and conditions as it may prescribe, of sufficient of his real estate to pay such sums."

The plaintiff — adopting the thoughts expressed in *Schwartz* v. *Schwartz* (200 Misc. 99) — argues that while, in case of a nonresident or hiding-resident husband, section 1171-a provides that sequestration may be ordered of his property, both real and personal and whether tangible or intangible, that is not so as to section 1171. There, it is urged, a sequestration receiver may be appointed, in the first instance, *only of the rents and profits* of real property of an accessible resident defendant and *not of the real property itself*, and that while section 1171 does provide in time for a sale or mortgage of the real property, that feature of the remedy of sequestration can be ordered only contingently. In other words, that when section 1171 is applicable, the sale or mortgage of the defendant's interest in realty can be ordered only where sequestration has first been founded on the basis of the existence of rents and profits; and since there is, in the case at bar, no income from the property, sequestration of the defendant's interest in the realty is claimed to be unavailable. As I see it, it is not necessary, in order to achieve a proper disposition of the case at bar, that I undertake to arrive at a solution of that question. For this much, at least, is plain: sequestration as an *effectual* remedy would appear to be unavailable to the plaintiff *now*. And it is *now* that the plaintiff is entitled to support; it is *now* that the court had directed payment; and it is *now* that the defendant is in default.

Assuming that the remedy of sequestration is in fact available here, it is in effect too inadequate to be effectual. Time and expense make the relief too nebulous. In the circumstances, the motion to punish is granted, and the defendant is fined the amount in default. Settle order, providing for opportunity to purge upon payment of the arrears in weekly installments of $10 each, to be paid together with the current alimony.