FLORENCE H. FINNEGAN, Plaintiff, *v.* HELEN HUMES and Another, Defendants.

Supreme Court, Lewis County, July 19, 1937.

*Edmund Fitzgerald*, for the plaintiff.

*Milton Carter*, for the defendants.

SMITH (E. N.), J. The action is one of ejectment. The case was upon trial calendar, the parties stipulated that there was no

question of fact for the consideration of a jury, a jury was waived, and the trial was by the court upon the following agreed state of facts:

" 1. That on or about the 16th day of May, 1930, Fred L. Smith conveyed the land and premises described in the complaint herein to defendants as husband and wife, and defendants thereupon became the owners of said land and premises as tenants by the entirety.

" 2. That on or about the 9th day of September, 1931, the plaintiff duly obtained judgment in the Supreme Court of this State against the defendant, James L. Humes, and one Henry J. Corbitt, and on the 18th day of September, 1931, a transcript of said judgment was duly filed and said judgment duly docketed in the Lewis County Clerk's office, that being the county in which said lands and premises are situate.

" 3. That on or about the 26th day of April, 1932, said defendants executed and delivered a deed conveying said premises to one Muriel K. Green, and later and on the same day, the said Muriel K. Green executed and delivered a deed conveying said premises to the defendant Helen Humes.

" 4. That on or about the 16th day of August, 1935, all the estate, right, title and interest of said James L. Humes in and to said premises were sold by the Sheriff of the County of Lewis upon an execution issued upon said judgment to the plaintiff for $1,000.00.

" 5. That on or about the 16th day of November, 1936, the said Sheriff duly executed and delivered to the plaintiff a Sheriff's deed conveying to said plaintiff all the estate, right, title and interest of said James L. Humes in and to said premises at the time of the docketing of said judgment in the County of Lewis.

" 6. That the defendant, Helen Humes, had been in the actual possession of said premises at all times since said 16th day of May, 1930. That she has not withheld possession of said premises from said plaintiff at any time, and that the defendant, James L. Humes, has no right, title or interest in said premises.

" 7. That on or about the 29th day of December, 1936, plaintiff duly served upon the defendants a notice to surrender to plaintiff the immediate possession of the premises described in the complaint and to vacate same."

The evidence showed that the value of the property involved in the action was $1,500, and that the rental value was fifteen dollars a month.

The parties defendant are husband and wife, and on the 16th day of May, 1930, acquired title to the premises described in the complaint as tenants by the entirety. On or about the 16th day

of August, 1935, all the right, title and interest of the defendant James L. Humes in said premises were sold by the sheriff of Lewis county for the sum of $1,000, upon an execution issued upon a judgment recovered by the plaintiff therein against said James L. Humes and another on the 9th day of September, 1931. The estate of the defendants at the time of the recovery of the judgment and the filing of the transcript thereof in Lewis county September 18, 1931, being by the entirety, each held title neither as tenants in common nor as joint tenants, but each held *per tout et non per my*. Upon the filing of said transcript said judgment became an apparent lien upon the interest of the defendant James L. Humes in said premises.

While possibly not necessary to a decision herein, it is at least proper to attempt to note the present state of the rulings of the courts and the law in New York applicable to an estate by the entireties.

Under the common law, the husband was entitled to the rents and profits of his wife's lands during their joint lives, and to the rents and profits of lands held in entirety; and this was his right as husband.

A tenancy by the entirety arises out of the marital relation and must arise during the marital relation. A grant to a man and a woman prior to their marriage would create a tenancy in common, no matter if it were made in contemplation of marriage. The right of the husband to the use of the property held by the entirety did not arise by reason of his estate by the entirety, but by reason of the common law, which gave to the husband the right to the use of the property of his wife, whether in her sole name or not. An estate by the entirety, under the common law, could not be altered by the act of the husband or of the wife acting separately, but only by the joint act of both. An action to partition land held by husband and wife by the entirety did not and does not lie. Under the common law it has long been held that a husband having the control and use of his wife's property could mortgage his interest in an estate by the entirety, but that, in case of foreclosure, the sale is subject to the wife's right of survivorship.

What was the effect upon an estate by the entirety of the enactment of the Married Women's Acts (Laws of 1848, 1849, 1860 and 1862) has been a subject of conflicting opinion in the decisions of the courts of the State of New York, and I am of the view that the conflict, as to certain phases of the subject, has not yet ended.

The case of *Beach* v. *Hollister* (3 Hun, 519) (decided in 1875) was an action of ejectment to recover possession of a house and lot purchased on execution sale upon a judgment recovered against

one Orange Owen, to whom and his wife the premises in question had been previously conveyed. The court held that the Married Women's Acts " operate only upon property which is exclusively the wife's, and were not intended to destroy the legal unity of husband and wife or to change the rule of the common law governing the effect of conveyances to them jointly." Holding that the Married Women's Acts did not affect estates by the entirety, the court said: " The husband has the right of possession of the property during the joint lives of himself and wife; and, in case of his surviving his wife, he becomes entitled to the fee." The holding of the court was entirely logical upon the hypothesis that the Married Women's Acts, which gave married women the separate control over the use of their own separate estates, applied only to lands exclusively owned by a wife, and not to estates held by the entirety.

In *Meeker* v. *Wright* (76 N. Y. 262) (decided in 1879) the views expressed in *Beach* v. *Hollister* (*supra*) were definitely disapproved, and the prevailing opinion expressed the view — not concurred in, on this subject, by a majority of the court — that, under the wording of the statute (1 R. S. pt. 2, tit. 2, art. 2, § 44), by a conveyance to a husband and wife, without words indicating a different intent, a tenancy in common was created.

In *Bertles* v. *Nunan* (92 N. Y. 152) (decided in 1883) much of the confusion was cleared up and much was left yet to be determined. The Married Women's Acts were fully considered, and it was held that these acts did not wipe out an estate by the entirety, but that a conveyance to a husband and wife, as such, created an estate by the entireties. The court said: " The Legislature did not intend to sweep away all the disabilities of married women depending upon the common-law fiction of a unity of persons, as a brief reference to the statutes will show. The act of 1848 gave no express authority to a married woman to grant or dispose of her property; such authority came by the act of 1849. The Legislature clearly understood that the common-law unity of husband and wife, and the disabilities dependent thereon still remained, notwithstanding those acts, because in 1860, by the act of that year, it empowered a married woman to perform labor and to carry on business on her separate account; to enter into contracts in reference to her separate real estate; to sue and be sued in all matters having relation to her property, and to maintain actions for injuries to her person. Until 1867 (Chap. 782) husbands retained their common-law right of survivorship to the personal property of their wives. It was not until chapter 887 of the laws of the same year, that husband and wife could, in civil actions, be compelled to give evidence for or against each other; * * *.

" From this course of legislation it is quite clear that the Legislature did not. understand that the common-law rule as to the unity of husband and wife had been abrogated by the acts of 1848, 1849 and 1860, and that whenever it intended an invasion of that rule, it made it by express enactment. Still more significant is the. act chapter 472 of the Laws of 1880, which provides that ' whenever husband and wife shall hold any lands or tenements as tenants in common, joint tenants or as tenants by entireties, they may make partition or division of the same between themselves,' by deeds duly executed under their hands and seals."

Again: " It was never, we believe, regarded as a mischief, that under a conveyance to husband and wife they should take as tenants by the entirety, and we have no reason to believe that it was within the contemplation of the Legislature to change that rule. Neither do we think that there is any public policy which requires that the statute should be so construed as to change the common-law rule. It was never considered that that rule abridged the rights of married women, but rather that it enlarged their rights, and improved their condition. It would be against the spirit of the statutes to cut down an estate of the wife by the entirety to an estate as tenant in common with her husband. If the rule is to be changed it should be changed by a plain act of the Legislature, applicable to future conveyances; otherwise incalculable mischief may follow by unsettling and disturbing dispositions of property made upon the faith of the common-law rule " (pp. 159, 160, 165).

So far, the law of this State is settled. In this case, however, the court refused to go farther, but said: " At common law where the estate was conveyed to husband and wife, * * * the husband had the control and use of the property during the joint. lives. It is unnecessary now to determine whether, under the Married Women's Acts in this State, the husband still has such a right in real estate conveyed to him and his wife jointly. It was said in some of the authorities cited that the statutes had changed that common-law rule, and that while husband and wife, in conveyances to them jointly, each took the entirety, yet that the land could not be sold for the husband's debts, or the use and profits thereof during their joint lives be entirely appropriated by him. It is not important in this case to determine what the relation of. the wife to the land, in such a case, now is, during the life of her husband."

The sole question before the court in Bertles v. Nunan (supra) was whether a conveyance to Cornelius Day and Hannah Day, his wife, created a tenancy in common or whether each took and

became seized of the entirety after the enactment of the Married Women's Acts.

It having been definitely settled that an estate by the entireties, in its essence, as an estate *per tout et non per my*, was unaffected by the Married Women's Acts, it remains to be considered as to what effect these acts giving married women control of their own property have upon the right of the husband to dispose of, by his sole deed or mortgage, his interest in an estate by the entireties; and also to consider what effect a judgment against the husband alone has upon his interest in such an estate, and also the effect thereof upon the wife's interest therein. It is universally held that no act of the husband and no judgment against the husband can affect the wife's right of survivorship; that right can be destroyed only by the dissolution of the marriage or by the joint act of both the husband and the wife. This subject has been one of consideration in the decisions of the courts of the several States, and there is a wide diversity of opinion; it is a much controverted question.

We are here concerned only with a case in which a judgment has been recovered against the husband and the sale of his interest in an estate by the entireties, under execution, and particularly with the effect of the sheriff's deed under execution upon the right of possession of real estate the title to which is held by the entireties. The controversy upon the subject will be revealed by reference to 13 Ruling Case Law. In reading these citations it should be realized that many of the expressions on this subject taken from the decisions cited are affected by the rule of the common law that the husband had the control of his wife's estate and could dispose of the entire possession of an estate held by the entireties and could mortgage and incumber such an estate; and it is by reason of the common-law rule that he had control of his wife's estate held in her own name. All this was changed by the Married Women's Acts, under which a married woman acquired the right to hold and enjoy her property as her separate estate.

Now for the quotations. At page 1115 (13 Ruling Case Law) it is said: " A judgment creditor stands in the place of his debtor, and he can take the property of his debtor subject only to the charges to which it was justly liable in the hands of the debtor at the time of the *redemption* [*sic*] of the judgment. It has been held as a consequence that if an estate by entireties cannot be sold on execution for a debt of the husband a judgment against the husband constituted no lien on the land so held during the life of the wife. \* \* \* There is authority for the position that though an estate by entireties cannot be sold on execution by

creditors of the husband during the life of the wife, a judgment against the husband will create a lien on the estate of the husband which might become operative in case he survived his wife. Still the expectancy of survivorship of a man holding an estate by entireties with his wife is not subject to a lien in favor of his individual judgment creditors, which will prevent a good title to the property from passing by a joint deed of the owners. Such conveyance would take precedence of and defeat any inchoate right the judgment creditor of the husband had contingent on the death of the wife. Where the husband is deemed to have such an interest in the land held by entireties that it may be sold on execution, it would seem on principle that a judgment against him would constitute a lien on his interest to the same extent as on his other real estate."

At page 1127 it is said: " There is authority for the position that an estate by entireties cannot be sold on execution at the instance of creditors of the husband so as to affect the rights of either during their joint lives, and for this reason it has been held that a judgment against the husband does not create any lien on such property. This view, however, ignores the interest which the husband, by his marital rights, has in the property of his wife. As the husband could, by the common law, dispose * * * of the possession of her real estate during their joint lives, he had such an interest in her estate as might be subjected to involuntary alienation by sale under execution. Hence, on principle it would seem as regards estates by the entireties that where the marital rights of the husband in the wife's property remain as at common law, they are subject to seizure and forced sale under execution; and that the purchaser at such sale will acquire an interest in the estate sold, by virtue of which he will succeed to all the rights and privileges which the husband had by law in the property sold."

It also reads (at p. 1128): " The levy of execution or a sale thereunder at the instance of creditors of a husband will not affect, on the death of the husband, the right of the wife to the entire estate as survivor."

Again (at p. 1129), in stating the effect of the " Married Women's Acts," it is said: " In most jurisdictions, however, under statutes which secure to married women the enjoyment of their real estate acquired during marriage as their separate property it is held that an estate by entireties cannot be sold on execution so as to affect in any way the rights of the wife therein, even during the life of the husband, and the purchaser at such a sale would have no right as against her to possession, and that though the statute does not entirely abolish estates by entireties and the husband's right as

survivor still exists, such interest is not subject to sale on execution, not being a contingent or vested remainder but merely an incident of the estate."

Again (at p. 1130): " In some jurisdictions it is held that the Married Women's Property Acts do not protect from sale on execution the husband's interest in lands held by entireties, but that they merely secure to the wife her right to enjoy one half of the estate as a quasi tenant in common with her husband together with the right of survivorship, and that the right to the other half of the estate during coverture and subject to the wife's right of survivorship is subject to sale on execution for the husband's debts. Again, a third view taken by the courts is that a judgment creditor of the husband may cause his execution to be levied on the husband's interest, and, by purchasing at the sale under this levy, may place himself so far in the room and stead of the execution debtor so that, if unredeemed, he would ultimately come into possession of the whole should the husband outlive the wife; still the rights of such purchaser are subordinate to those of the wife, and if the statute declared that the interest of the husband in the real estate of his wife shall not be sold or disposed of by virtue of any judgment, nor shall the husband and wife be ejected from such real estate by virtue of any judgment, such purchaser is not, as against the wife, entitled to be put in possession of any part of such property, nor to receive any of the rents or profits thereof."

It will be noted that there are no New York cases cited on the subjects above considered in 13 Ruling Case Law; but citations from other jurisdictions serve to reveal the nature of the problem.

It having been held that the Married Women's Acts giving to the wife the right to the use of her own property, whether held by her in fee or by a tenancy in common, or by a joint tenancy, or by a tenancy by the entirety, in no wise altered the nature of the estate by the entirety, it would seem that, the estate being only *per tout et non per my*, holdings to the effect that a husband may mortgage his interest in such an estate, or that a judgment against a husband creates a lien upon such an estate, subject to sale upon execution issued upon such judgment, apart from the interest which he has by virtue of survivorship, are illogical and are a carry-over of the rules applicable to the status of the law as it was prior to the enactment of the Married Women's Acts. Prior to the enactment of these acts the husband had the whole use and control of the wife's property, and, having such use, of course it was subject to mortgage by him, subject to sale upon execution issued upon a judgment against him, and subject to his conveyance of such use. This right of use and control was the major premise upon which

such rules were based. Once the major premise was removed by the enactment of the Married Women's Acts the basis of the holdings was taken away.

There is nothing in the decisions of the courts of this State which throws any light upon the subject herein involved until the decision in the case of *Hiles* v. *Fisher* (144 N. Y. 306 [1895]).

Before taking up the consideration of the effect of the decision in *Hiles* v. *Fisher* (*supra*) attention is called to the quality of an estate by the entirety as related to the marital relationship, out of which it arises. In 2 Pollock & Maitland's History of English Law (p. 431) it is said: " A tenancy by entireties has been called ' the most intimate union of ownership known to the Law ' (Challis Real Property (1892), p. 344). It has been said that while two joint tenants are seized *per my et per tout*, the husband and wife in such a case are seized *per tout et non per my*. The one means by which the land can be alienated during the marriage is the fine levied by husband and wife; if no such alienation be made, the survivor will become sole tenant of the whole. During the marriage the husband has no share of the land of which he can dispose. Neither of the spouses has anything; both of them have all. Some of the numerous conveyances that are made at an early time in this form may not have been intended to have this effect, but the doctrine of the tenancy by entireties serves to show that an intimate ' community of marital conquests ' was not very far from the minds of our lawyers."

Again, as to the effect of a holding which would recognize the severability of an inseverable estate, we quote from the case of *Chandler* v. *Cheney* (37 Ind. 391), which reveals the incongruities following the creation of a tenancy in common of the use of an estate by the entirety in aid of mortgagees or judgment creditors of a husband. In this case the court said: " We are of the opinion that from the peculiar nature of this estate, and from the legal relation of the parties, there must be unity of estate, unity of possession, unity of control, and unity in conveying or encumbering it; and it necessarily and logically results that it cannot be seized and sold upon execution for the separate debts of either the husband or the wife. The estate is placed beyond the exclusive control of either of the parties, or the reach of creditors, unless it can be successfully attacked and set aside for fraud. Any other rule would create injustice and hardship. If the husband can dispose of the estate during their joint lives, the wife is deprived of the enjoyment without her consent. If the husband can, by his separate deed, make a valid mortgage of his interest in fee, then the purchaser upon foreclosure would acquire a fee-simple title,

which would defeat the right of survivorship. But suppose the husband cannot defeat the right of survivorship, and it is settled by all the authorities that he cannot, upon what principle can it be maintained that he can, by leasing or mortgaging his interest in the estate deprive his wife of the use and enjoyment of it during his life? The property belongs as much to the wife as to the husband, and she has just as clear, undoubted, and equitable a right to the use and enjoyment of the property during the existence of the marriage, as she has to succeed to the estate upon the death of her husband. The opposite doctrine is full of absurdities and gross injustice. If the doctrine contended for by the appellant is correct, the husband may, without the consent and concurrence of his wife, lease the property to a stranger, and compel his wife and children to leave the comfortable home that belongs as much to her as to him  *  *  *. In such a case, the wife can have no relief except in the death of her husband. If the husband has a life estate separate and distinct from his wife, then he may mortgage such estate, or it may be seized and sold upon execution for his debts. In either event, the purchaser would acquire just the same interest that the husband had.  *  *·  * The right of the wife to the joint enjoyment of the estate, during the marriage, is as valuable and sacred as the right of taking the entire estate by survivorship upon the death of the husband. The rights of the wife in the joint property are as sacred as those of the husband, and should be as firmly secured, guarded, and protected by the law as are his. There is an equity in equality, but there is gross inequity and injustice in permitting the husband to deprive the wife of the use and enjoyment of an estate that does not belong exclusively to either, but to both, and which belongs as much to the wife as to the husband."

In *Hiles* v. *Fisher* (*supra*) we have a case of the mortgaging by the husband of his interest in an estate by the entireties, a foreclosure of the mortgage, and a purchase by the holder of the mortgage of the husband's estate. In considering the effect of such a mortgage and the sale of the mortgaged premises under a judgment of foreclosure, the court made clear the fact that the husband's common-law right to the use of the wife's property did not arise from the nature of an estate by the entirety. It said: " The right of the husband at common law to take the rents and profits of lands held by him and his wife as tenants by the entirety, during coverture, and to assign and dispose of them during that period, did not, we apprehend, spring from the peculiar nature of this estate. He acquired no such right by force of the conveyance

itself, and it was not an incident thereto. It was a right which followed the conveyance and inured to the husband from the general principle of the common law which vested in the husband *jure uxoris* the rents and profits of his wife's lands during their joint lives. * * * The husband took the rents and profits of lands held in entirety upon the same right that he took the rents and profits or her other real estate, whether held by a sole or joint title, namely, his right as husband." Then, referring to the effect of the Married Women's Acts, the court said: " The right to the rents and profits of her lands *jure uxoris*, during the joint lives, was completely swept away, not by express enactment, but as a necessary consequence of investing her with the beneficial use of her own property, free from his control. * * * If it is still held, notwithstanding this legislation, that the husband takes the whole rents and profits during coverture in lands held in entirety, and may exclude the wife from any participation therein, an exception is allowed, standing upon no principle, and it deprives the wife, although she has an undoubted interest and estate in the land, from any benefit thereof during the lives of both. There are, as we can perceive, but two other alternatives. Either the rents and profits follow the nature of the estate, and can neither be disposed of nor charged except by the joint act of both husband and wife, which seems to be the view taken in *McCurdy* v. *Canning* (64 Pa. St. 39), or the parties become tenants in common or joint tenants of the use, each being entitled to one-half of the rents and profits during the joint lives, with power to each to dispose of or to charge his or her moiety during the same period, which seems to be the view taken in *Buttlar* v. *Rosenblath* (42 N. J. Eq. 651). We think the rule adopted in New Jersey best reconciles the difficulties surrounding the subject. The estate granted is not thereby changed. It leaves it untouched, with all its common-law incidents. It deals with the rents and profits and with the use and control of the estate during coverture only, and gives each party equal rights so long as the question of survivorship is in abeyance, thereby conforming to the intention of the new legislation to take away the husband's right *jure uxoris*, in his wife's property, and to enable the wife to have and enjoy ' whatever estate she gets by any conveyance made to her or to her and others jointly, and does not enlarge or diminish the estate.' "

Although I cannot bring my personal judgment into conformity with this opinion, on the ground that it amounts practically to a severability of an inseverable estate, and that the use of an estate is its only real value, and that, from the nature of the estate itself, there should be no severance between the title to and the use of

the estate, whereby the former remains an estate *per tout et non per my* and the latter becomes an estate *per tout et per my*, nevertheless I am bound by this opinion — only, however, so far as it goes.

It has already been noted that the rule is universal that there can be no partition or severance of an estate by the entirety, excepting upon the consent of both the husband and the wife or upon a dissolution of the marriage. The weight of authority in several jurisdictions of the United States is to the effect that the husband may not mortgage his interest in an estate by the entirety, and the overwhelming weight of authority in said jurisdiction is to the effect that the husband's interest in his estate by the entirety may not be sold under execution issued under a judgment against him. There is authority to support the proposition that a judgment against a husband becomes a lien upon any interest in lands he may hold by the entirety, which becomes effective in case of his survivorship. (The authorities on these subjects are collated in 12 Ann. Cas. 53, and 24 id. [1912-C], at p. 1242, and 30 L. R. A. at p. 331.) Excepting as to the right of the husband to mortgage his interest in an estate by the entirety, there is no decision in the State of New York to which attention has been called upon the subject here under consideration, to wit, the effect (a) of a judgment, and (b) of a sale upon execution issued upon a judgment recovered against a husband by his creditors. Cases bearing upon the subject are: *Beach* v. *Hollister* (3 Hun, 519 [1875]); *Hiles* v. *Fisher* (144 N. Y. 306 [1895]); *Mardt* v. *Scharmach* (65 Misc. 124 [1909]); *Bartkowaik* v. *Sampson* (73 id. 446 [1911]); *Lopez* v. *McQuade* (151 id. 390 [1934]).

In *Beach* v. *Hollister* (*supra*) there was an estate by the entirety in one Orange Owen and Julia, his wife; a judgment was recovered against Orange Owen, and the premises held by the entirety were sold upon execution; after the sale, Owen and his wife conveyed the property to another, who in turn sold the property to a third party. After the sale under execution, the wife, Julia, obtained an absolute divorce from Orange. The action was one of ejectment. The judgment having been recovered before the divorce, it was held that this divorce had no effect upon the rights of the purchaser at the execution sale, but that he became invested " with the right to occupy and enjoy the profits of the land as owner during the joint lives of the husband and wife; subject to the contingency that if the wife, so divorced survives her husband, the purchaser's estate will then terminate, but that if the husband survives such purchaser will become the absolute owner of the whole estate " (headnote). The court held that the interest of the husband was subject to sale under execution and that " the

husband in a case like this has the absolute control of the estate of his wife during his life, and may mortgage, lease and convey his interest. It would appear also, that his contingent interest, dependent upon his wife's surviving him, may be sold." The subject of the decision was the effect of a divorce after the recovery by the creditor of a judgment against the husband, a question not here involved. This decision was based upon the opinion in the case of *Ames* v. *Norman* (4 Sneed [Tenn.], 683; 70 Am. Dec. 269), and upon the assumption that the common-law right of a husband to the use of his wife's property during his life still remained unaffected by the Married Women's Acts.

After the decisions in *Bertles* v. *Nunan* (*supra*), in *Meeker* v. *Wright* (76 N. Y. 262, at p. 270), and in *Hiles* v. *Fisher* (*supra*) (to the effect that the Married Women's Acts were applicable to estates by the entirety), *Beach* v. *Hollister* ceased to be of any weight upon the subject.

In *Mardt* v. *Scharmach* (*supra*) the husband's interest in an estate by the entirety was sold under execution by virtue of a judgment for alimony obtained against him by his wife in a separation action. The interest of the husband was purchased on execution sale by the plaintiff's attorney, who assigned the sheriff's certificate of sale to the plaintiff (wife), to whom the sheriff executed a deed. The circumstances here were peculiar. The court, at Special Term, relying upon *Beach* v. *Hollister* (*supra*), held that the title in the wife was good, and that the sheriff's deed vested in her the entire estate. Of course it could vest in her no greater estate than the husband held. In this case an interesting question would arise in the event the wife predeceased the husband. This decision is of little value as an authority because it rested upon the assumptions in the case of *Beach* v. *Hollister*.

In *Bartkowaik* v. *Sampson* (*supra*) the question of the rights of a receiver in supplementary proceedings was involved, where there was a tenancy by the entirety, and the ruling was based solely upon the holding in *Beach* v. *Hollister* (*supra*). For this reason the decision in this case aids little.

In *Lopez* v. *McQuade* (*supra*) the husband's interest in an estate by the entirety had been sold upon execution, and the wife redeemed the interest sold by paying to the sheriff the amount of the purchase price upon the sale; but the sheriff executed and delivered the deed to the judgment creditor. It was held, at Special Term, that the wife, having an estate by the entirety, had no right to redeem on the ground that, under section 737 of the Civil Practice Act, no such right was given to a tenant by the entirety. This case is not an authority upon the subject here under consideration for

the reason that it was not discussed. However, it was assumed, on the authority of *Hiles* v. *Fisher* (*supra*), that the right to sell, under execution under a judgment, a husband's right in an estate by the entirety, existed; and, under such authority, the opinion states: " The interest of the husband from an early period could be mortgaged and sold on foreclosure and was the subject of sale on execution, subject, however, to the wife's right of survivorship." (Citing *Beach* v. *Hollister*, *supra*, which latter case we have found is now no precedent upon the subject.)

Before considering the effect to be given to the decision in *Hiles* v. *Fisher* (*supra*), it is interesting to note that our Court of Appeals, in *Matter of Lyon* (233 N. Y. 208 [1922]), held that, apart from the statute of 1916 (Cons. Laws, chap. 60, § 220, subd. 7), upon the death of one of the tenants by the entirety the estate of the survivor was not taxable as a transfer of title. The court said: " Husband and wife were not joint tenants. One did not acquire the rights and property of the other by survivorship. *The fee was indivisible. As an entirety it was invested in both.* For this purpose they were considered one and not two. On the death of either the fee vested in the other, not because there was a transfer of any part of the estate, but because the survivor was the representative of the single ownership. The rule was a technical one. So are many of the rules affecting real estate. We appeal to history and not to logic for the explanation."

Reverting to the consideration of *Hiles* v. *Fisher* (*supra*), there was no discussion of the question, can a husband mortgage his estate by the entirety, excepting the statement of the rule of common law that the husband had the power to sell, mortgage or lease, during coverture, his life interest, and that this life interest was, according to weight of authority, subject to the claims of his creditors. We have seen that this common-law rule was wiped out by the Married Women's Acts. The sole subject of consideration was the rents and profits, and it was held that as to these the parties became tenants in common or joint tenants. I cannot bring my mind into accord with this view for the reason that it does not accord with logic or with the great majority of the authorities upon the subject, but, nevertheless, I am bound by it and must follow it.

The judgment recovered in the instant case became a lien upon the husband's interest in the estate. The sheriff's deed of this interest went no farther than the lien itself, and no greater rights were obtained under it than could have been acquired had the execution been returned unsatisfied and had there been an examination in supplementary proceedings with respect to rents and

profits. Had there been such an examination it would have appeared that there were no rents and profits. The only effect of the sheriff's deed was to give a right of an accounting as to rents and profits. There was by the deed acquired no right to possession, by reason of the character of the estate. Under her estate by the entirety the wife has the right to the possession of the whole estate; under her title she holds not a moiety but all, so far as possession is concerned. There could be no tenancy in common of the estate. *Hiles* v. *Fisher* created only a tenancy in common of the rents and profits of the estate, not of the occupancy thereof. Here, there are no rents; we have simply a home, the whole of which is in the possession, under rights inherent in an estate by the entirety, of the defendant Helen Humes. The incongruities, embarrassments and absurdities of any other holding I need not here animadvert upon. The court in *Hiles* v. *Fisher* intended no such result. Of course an estate by the entireties should not be used as an instrument of fraud, and if we had here a commercial piece of real estate with large rentals held by the entirety, excepting probably to the extent that the peculiar circumstances might show that they were necessary to maintain the marital relation, the court, according to the equities of the situation, would be able to protect the creditors of a husband as against any attempt on his part to transfer his share of the rentals for the purpose of avoiding the claims of creditors. Even this, however, in my opinion, as hereinbefore indicated, would constitute an impairment of the essence of the estate, because its only value would be its earnings and because I feel, but cannot here hold, that the holding in *Hiles* v. *Fisher* has effectuated a destruction of that community of interest which was of the very essence of an estate by the entirety. To illustrate: Suppose a father, after the marriage of his son or daughter, deeded a property having large rentals to his married son or daughter and the son's wife or the daughter's husband, by the entireties, having it in mind that he was thereby making secure the lives of both so long as the marital relation continued; would it not be destructive of his purpose to allow the creditors of either to reach the income of the estate set up for their mutual support? Such, of course, is of the very essence of an estate by the entirety. Furthermore, the opinion in *Matter of Lyon (supra)*, hereinbefore quoted from, handed down many years after *Hiles* v. *Fisher*, would seem to indicate a contrary view, although the decision therein did not have the effect of passing upon the question decided in *Hiles* v. *Fisher*.

I, therefore, reach the conclusion that the defendant Helen Humes, by reason of her estate by the entirety, is entitled to occupy the

real property in question, and the whole of it, to the exclusion, during her natural life, of the plaintiff, purchaser on execution sale of her husband's interest, so long as there are no rentals received therefrom; that she is not a tenant in common of the occupancy with the purchaser at the execution sale. There has been and can be, under the facts in this case, no ouster which would lay the foundation of an action of ejectment. The right of the defendant Helen Humes to occupy the whole of the property herein involved is unaffected by the judgment and the sale thereunder. If the husband, the defendant James L. Humes, should survive her, the judgment attached to the whole property and the deed thereunder may carry the whole title thereto. On the other hand, if she should survive her husband the property becomes wholly hers, unaffected by the lien of the judgment against her husband.

The complaint should, therefore, be dismissed, with costs to the defendant Helen Humes.

Judgment accordingly.