MARVIN FINE, Plaintiff, *v.* IRVING SCHEINHAUS et al., Defendants.

Supreme Court, Special Term, Onondaga County, January 3, 1952.

*Mayer Koplovitz* for defendants.

*Eugene H. Klein* for plaintiff.

SEARL, J. The form of action for ejectment comes to our nation from the common law of England, in fact, it has been termed a " creature of Westminster Hall " (18 Am. Jur., Ejectment, § 4, p. 9). We find the English author, Runnington, had published in 1795 his work on the " Legal Remedy by Ejectment ", in which he cites cases as early as 1676. So far as diligent search reveals, this is the first recorded case where one seeks legally to evict a mother-in-law.

The problem here posed only becomes difficult of solution because of the fact that title to a home located at 204 Scottholm Boulevard, Syracuse, is in the name of plaintiff and his wife, Selma Fine, one of the defendants. The ownership of the premises, referred to as being of the value of $40,000, is neither one in common, nor is it one known as a joint tenancy. It is a tenancy by the entirety. It is too well known to require comment that where property is conveyed to husband and wife, without qualification as to any other type of ownership, the title is inseverable. The husband owns the entire property subject to the possibility his wife may survive him. In turn, the wife owns the entire property subject to the possibility the husband may survive her. Upon the death of one, the survivor takes all. Both have the right of possession. A husband or wife may mortgage his or her interest. However, if one spouse dies a mortgagee of any interest of such deceased spouse in the property is without remedy, for the survivor takes clear from such mortgage, provided the survivor had not joined in the mortgage. One, without the other, cannot subject the property to an easement. (See *Grassi* v. *Loweth*, 130 Misc. 861.) This legal relationship binds real property owned by husband and wife closer together than are the bonds of marriage, which are only too frequently broken. When the marriage bonds are severed by legal action, the tenancy by entirety is likewise severed. Then the parties become owners or tenants in common and the property is then subject to partition.

The question naturally arises, who is entitled to possession and who is entitled to the rents accruing from the property

where husband and wife own as tenants by the entirety? Beginning in the years 1848–1860 our Legislature commenced to appraise the rights of women. Even in these years before woman suffrage became a vital issue, the realization of the ability of woman to manage her own affairs commenced to permeate the legislative and civilian atmosphere. Before that time the use of and income from a wife's property, termed the " usufruct ", went to the husband. The legislation passed during the years referred to was the so-called " Married Women's Acts " (L. 1848, ch. 200; L. 1849, ch. 375; L. 1860, ch. 90). The wife then became mistress of her own real estate. Thereby the wife was given the equal right of possession with her husband of real estate held by both as tenants by the entirety.

Had this action arisen prior to 1848, courts would have had no difficulty in promptly finding that the husband as lord of the house was master of his own castle and would have promptly given him the legal right to eject a mother-in-law or any other person whose presence was distasteful to him. Then he had the right of legal possession if he claimed he had been ousted. If the premises now involved were a business block or apartment house, no serious question would be presented. As husband and wife both are now entitled to possession, the court could readily solve the difficulty by dividing the rents equally. On the other hand, when one attempts to divide the possession of a one-family dwelling house, a home, a real obstacle is presented. The court must then consider the applicability of the phrase that no house is large enough for two families. Individual eccentricities will crop out. The husband may claim, justly or unjustly, that the mother-in-law has used all the hot water so that he cannot shave. Many ills are fancied. The mother-in-law may be the most kindly and retiring woman in the world, yet her very presence in the household may prove an itch to the husband.

As to instant Motion No. 1, whereby defendants seek to dismiss plaintiff's complaint as failing to state facts sufficient to constitute a cause of action, the motion must be denied as to the first alleged cause of action for eviction, for the following reasons: Section 1004 of the Civil Practice Act provides: " Where the action is brought by a tenant in common or a joint tenant against his co-tenant, the plaintiff, besides proving his right, must also prove that the defendant actually ousted him or did some other act amounting to a total denial of his right."

Although this provision does not include the expression " tenants by the entirety ", yet it refers to the rights of co-ten-

ants. It may be that the Legislature never contemplated that a husband would dare to oppose his wife to the extent of actually attempting to eject a mother-in-law. In the instant case the husband cannot succeed unless he proves actually or inferentially that his wife and mother-in-law have ousted him of possession. The complaint contains the allegation " That the plaintiff is denied possession ". As plaintiff is entitled on a motion of this type to the most favorable inference that can be drawn from the language of the complaint, it is apparent that the motion as to the first alleged cause of action must be denied. Whether plaintiff can produce proof to sustain this claim is another matter.

The second alleged cause of action is to effect that the presence of the mother-in-law has brought about " a marital rift between plaintiff, his wife and their son." The complaint further alleges that the husband has been compelled to undergo unusual expense by way of medical and other expenses for his son; that plaintiff was caused mental anguish, loss of sleep, appetite, and earnings. A demand is made for judgment resulting from these damages of $25,000 against his wife and mother-in-law.

It is unnecessary to elaborate upon this claim in the complaint. It must be stricken out. Prior to 1937 our courts held that neither a husband nor wife could successfully pursue a claim for money damages against the other arising out of slander, assault and battery, or other tort. (*Freethy* v. *Freethy,* 42 Barb. 641; *Longendyke* v. *Longendyke,* 44 Barb. 366.) The reasoning there was that such types of action were fraught with disastrous consequences to domestic peace and concord. By chapter 669 of the Laws of 1937, our Legislature removed this restriction. A married woman, and conversely, a married man, now has a right of action against the other spouse for injury to person, property, or character, covering any " personal injury " as defined by section 37-a of the General Construction Law. Such definition includes " libel, slander and malicious prosecution "; also " assault, battery, false imprisonment, or other actionable injury ".

Even with the limitation removed one can scarcely envision the presence of a mother-in-law as constituting a causal relation for medical expense. If every act by husband or wife that might be distasteful to the other marital partner were cause for a damage suit, our already crowded courts might well be incapable of bearing the burden.

What precedent one may ask is there for this court holding that a cause of action is alleged in the first count of the complaint?

Although no reported case can be found in which a suitor has sought to question the legal right of a mother-in-law to reside in the home of her daughter and son-in-law, still the broad question of possession and ouster is not without precedent. We find the case of *Finnegan* v. *Humes* (163 Misc. 840, mod. 252 App. Div. 385, affd., as mod., 277 N. Y. 682). There James L. Humes and his wife, Helen Humes, became owners of a parcel of real property as tenants by the entirety. Thereafter plaintiff Finnegan obtained a judgment against the husband. Still later Humes and his wife conveyed their property to one Green, who, on the same day, conveyed the property to the wife, Helen Humes. Thereafter the Sheriff, pursuant to an execution on plaintiff's judgment, sold all the right, title and interest of the husband to plaintiff Finnegan. A stipulation at time of trial had been entered into by respective counsel to effect that defendant wife had been in actual possession of the premises at all times from the date she and her husband obtained title, and that the wife had " not withheld possession of said premises from said plaintiff at any time ".

The Appellate Division held that the transfer by the husband and wife, holding as tenants by the entirety, to a third party and by the third party to the wife, could not prejudice plaintiff's rights as against the interest of the husband, but did not prejudice the rights of the wife. The crucial point in the decision was, however, that, in order to maintain an action for ejectment between persons having a joint interest, there must be an ouster of the person seeking relief, and that the only right the plaintiff had was to be put into possession with the defendant wife and " to share with her the occupancy and use of the premises." The court further held that the judgment should amount to a nonsuit only for failure to prove an ouster, and should be without prejudice. Thus it appears that the stipulation that the wife had " not withheld possession of said premises from said plaintiff at any time " indicated there was no ouster of plaintiff. Therefore plaintiff could not succeed in the action for ejectment. Inferentially, had the husband been able to establish dispossession, he would have been entitled to succeed.

The facts in the above-cited case are substantially parallel with those in the case at bar. There, as here, a one-family home and not a business block nor apartment house is involved. The only real distinction was the lack of a mother-in-law. In the

instant case, as distinguished from this cited case, the plaintiff sets forth that he " is denied possession." That is the crucial question. (See Carmody's New York Practice, vol. 8, p. 196.)

How a trial court can physically divide a one-family house so as to permit two antagonistic litigants to have possession at the same time is not a question presently to be solved. The threat of King Solomon to cleave in two a child, giving to each parent one half, may have to serve here as a pattern for the court to order a wall to be erected through the center of the home. Such might meet the strict concepts of the law. It would hardly meet the demands of necessity or modern living conditions. The hope in the instant case is that a wise and diplomatic court may effect a compromise when both parties confront a jury, which ofttimes proves a persuasive influence. An action in ejectment is one at law to be tried before a jury, unless a jury is waived or a reference directed (Civ. Prac. Act, § 425).

From a legal standpoint ejectment is apparently the only remedy if both parties pursue their present declared intentions. While both parties are living together in premises held by entirety, neither can accuse the other, or a guest of the other, of being a squatter or intruder. Nor are summary proceedings available either as against the wife or mother-in-law (*Cipperly* v. *Cipperly,* 104 Misc. 434; *Marshall* v. *Marshall,* 116 Misc. 249). Nor can it be claimed that the husband, as head of the family, has a right to dispossess his mother-in-law, for no claim is made that the wife had ever granted her husband sole right of possession. (See *Martin* v. *Rector,* 101 N. Y. 77.)

I revert now to Motion No. 2, brought by plaintiff, to strike out defendants' answer as sham and frivolous and for summary judgment. (Rules Civ. Prac., rule 113.) Affidavits have been filed by respective parties. They enumerate their claims. To elaborate on these claims would serve but to intensify the feeling of hostility that now exists. It is sufficient to state that there is an answer that denies, among other allegations, that plaintiff has been dispossessed from the premises. Issues are raised, so that the court must deny plaintiff's motion for summary judgment.

Plaintiff, it is true, joins an action at law, ejectment, with a demand for injunctive relief, and damages for withholding possession. Legal and equitable relief may both be demanded in the same complaint. (*Hahl* v. *Sugo,* 169 N. Y. 109.) Legal issues may be framed for trial thereof by jury. Although plaintiff does not seek to eject his wife from the property, yet,

as a tenant by the entirety, she is a proper, if not a necessary party. (See *Bensieck* v. *Cook,* 110 Mo. 173, and Warvelle on Ejectment, § 131, p. 137.)

As both husband and wife in the instant case are entitled to possession, the wife is legally entitled to permit her mother to share possession with her. By the same token, if the husband, after an evening out, saw fit to bring home with him half a dozen cronies for a cup of coffee, or, bring in a cousin who was out of work to spend six months with him and share possession, the wife in turn could not legally interfere.

It is not the province of a court to deal with the subject of philosophy, except so far as it concerns the right conduct of individuals who might be prompted to bring actions of this nature. Any attempt to reduce rather than increase the number of matrimonial actions brought in our courts may be looked upon sympathetically. The complexities of a mother-in-law, daughter-in-law, father-in-law, and son-in-law relationship have increased immeasurably during the last few years. Scarcity of housing conditions, scarcity of help to assist in care of the children, rising living costs have all increased rather than lessened problems engendered by putting people in each other's way, so to speak. It is not only the sons and daughters-in-law that suffer. The high wages paid today permit them often to leave a crowded home and seek relaxation in other haunts. The mother-in-law might well crave a change of scene. The meager income from a few securities left by a deceased husband, gauged on today's purchasing power, may compel her to occupy the role only of a baby sitter. The situation from the standpoint of either is not one of perfection. Someone has stated that a mother-in-law is what an in-law makes her. The only reasonable solution is apparently one of give and take. Mutual forbearance toward other users of our over-crowded highways is by traffic law required, but too little observed.

The daughter-in-law of today is the mother-in-law of tomorrow. Lastly, if each one could place himself or herself in the position of the other and accord the same treatment, respect, and privileges as would be desired under the same circumstances, home life would be much happier and the limited days of life granted us by the Creator pass more pleasantly.

Orders will follow in conformity with this memorandum.