## MILLAR ET AL. *v.* MILLAR ET AL.

[No. 150, October Term, 1951.]

*Decided April 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*George B. P. Ward,* with whom was *H. Donald Schwaab,* on the brief, for appellant.

*Hugh J. Monaghan, II,* for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellant was the wife of David Millar, and, during their marriage, the fee simple property at 7116

Park Heights Avenue, Baltimore, was conveyed to them as tenants by the entireties. This was in 1919. In 1923, he filed a bill for divorce *a vinculo* against her in the Circuit Court No. 2 of Baltimore City on the ground of desertion. The case was decided against him because of his misconduct, and, on appeal here, the action of the chancellor was affirmed on this ground. In the opinion, it was said that even were this not the case, the bill would have been dismissed because the separation was by agreement. *Millar v. Millar,* 1926, 150 Md. 698, 137 A. 915. The parties never lived together after 1920, and the appellant has always, since that time, resided in the property. In 1928, David Millar, who had moved to California, brought suit for absolute divorce against the appellant in the Superior Court of San Francisco County in that state, on the grounds of extreme cruelty and desertion. The appellant was not served personally with summons, but, in accordance with the California law, there was publication in a California newspaper, and there was an affidavit of some private individual, unidentified except for his name, that he had mailed her, with postage prepaid, to 7116 Park Heights Avenue, Baltimore, Maryland, a copy of the summons, a copy of the complaint, affidavit of publication of summons, and an order for publication of summons. The appellant denies that she ever received this, or had any notice of the proceedings until 1941. An interlocutory decree of divorce was entered in California in 1928, and a final decree in 1929.

David Millar subsequently married Sally Millar, and died in February, 1950. Sally Millar survived him. He left a daughter, Muriel, who was the daughter of the appellant, and a daughter, Edith May, who was the daughter of Sally. By Millar's will, he devised one-half of his estate to his daughter, Muriel, and the other half to Muriel in trust for his daughter, Edith May. Sally Millar was left nothing, but she claims her statutory one-third of his estate here under Maryland law. She and her infant daughter, Edith May Millar, through her

as next friend, filed their bill of complaint in Circuit Court No. 2 of Baltimore City against Muriel A. Millar, individually and as trustee, and Agnes Millar, claiming that the tenancy by the entireties was dissolved, as a result of the California divorce, that the Park Heights Avenue property belonged one-half to Agnes Millar, and of the other half, one-third belonged to Sally Millar as her statutory interest under Code Article 93, Sec. 318, one-third to Muriel A. Millar, trustee for Edith May Millar, and one-third to Muriel A. Millar, individually. As the property was not susceptible of partition, the bill asked for a sale in lieu thereof. The chancellor found that the title to the property was as alleged in the bill, and passed a decree directing the property to be sold. From that decree, Agnes Millar appeals here.

There is no question of fraudulent domicile in this case. David Millar went to California to live and remained there until he died. This is, therefore, not a case in which the courts of the state of domiciliary origin may examine into the facts to determine whether a divorce obtained in another state was obtained there by a fraudulent representation that the party applying for it had acquired a new domicile there. *Williams v. North Carolina,* 325 U. S. 226, 230, 65 S. Ct. 1092, 89 L. Ed. 1577. The attack here is on the compliance with the procedural requirements of the State of California. The Supreme Court, in the first *Williams* case, *Williams v. North Carolina,* 317 U. S. 287, 298, 299, 63 S. Ct. 207, 213, 87 L. Ed. 279, said: "Thus it is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service meet the requirements of due process." And, 317 U. S. at page 303, 63 S. Ct. at page 215: "So, when a court of one state acting in accord with the requirements of procedural

due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter." In *Estin v. Estin*, 334 U. S. 541, 68 S. Ct. 1213, 1215, 92 L. Ed. 1561, a resident of New York had left his wife and had gone to Nevada, and there instituted an action for divorce. The wife, still in New York, was notified of the action by constructive service, but did not appear. There was no question raised in that case of his domicile in Nevada, and the Supreme Court said that it had previously held in the *Williams* cases, *supra*, "that a divorce decree granted by a State to one of its domiciliaries is entitled to full faith and credit in a bigamy prosecution brought in another State, even though the other spouse was given notice of the divorce proceeding only through constructive service."

The California Code of Civil Procedure, Secs 412, 413, 415, provides for service by publication on non-residents, and where the residence of a non-resident defendant is known, the court must direct a copy of the summons and complaint to be forthwith posted in the post office, directed to the person to be served at his or her place of residence. Proof of service in case of publication includes an affidavit of a deposit of the summons in the post office, if the same has been deposited. All of these requirements seem to have been complied with in the present case. It is not contemplated by the California statute that it must be affirmatively shown that the copy mailed was received by the party to whom it is mailed, nor is there any obligation on the complainant to have it mailed by any specified officer or person. The only requirement is that it shall be mailed, and that the person mailing it, whoever that may be, shall make an affidavit to that effect. It seems to us that, so far as we can determine, all the procedural requirements in California were carried out, and that there was no denial of due

process. For at least a hundred years, service by publication on non-residents has been authorized by statute, and fully recognized in this State as a valid procedure, and formerly without mailing a copy. What is more to the point, the California court itself so decided by acting in the case, and granting the divorce. Since it had jurisdiction over the complainant and over the *res,* it could determine whether the procedure required by that statute had been complied with.

Whether the Maryland decree was *res judicata* because the grounds alleged in the California case must have been earlier decided to be false by the Maryland court, since the parties never lived together after 1920, and whether it was a fraud upon the California court not to produce the Maryland record before it during the proceedings, are matters which are not properly before us here. They are questions which should be presented to the California court. *Johnson v. Johnson,* 199 Md. 329, 330, 86 A. 2d 520, 523. Whether the appellant could now raise them there, after the death of David Millar, is a question for California law, which we cannot pass upon. She knew about the divorce as far back as 1941, when David Millar was still alive, and did nothing about it. How far that would prejudice her now is also a matter for the California court, and not for us, to decide. The fact that there was a prior Maryland decree dismissing David Millar's bill of complaint does not prevent the Maryland court from giving full faith and credit to the California decree. We had a similar question in the *Johnson* case, *supra.* In that case, the plaintiff was attacking a divorce in Florida in the Supreme Court of the United States, because the Florida court had not given full faith and credit to a prior Maryland decree, and had not recognized the latter as *res judicata.* We said: "Though pursuing the proper remedy, plaintiff also suggests that the Maryland courts might ignore the Florida decree because it denied full faith and credit to the earlier Maryland decree. This suggestion is groundless." We referred to the New York case of *Lynn v.*

*Lynn,* 302 N. Y. 193, 97 N. E. 2d 748, 751, which was a similar case, and quoted from it: "Nevada's asserted denial of full faith does not justify or permit retaliation by any other state. As the decisions make plain, plaintiff's only remedy to correct the alleged error was by direct appeal from the Nevada judgment through the Nevada courts, and, if necessary, to the Supreme Court of the United States. (Citing authorities.)"

The final question upon which, perhaps, the appellant relies most strongly is that, even though the California decree is entitled to full faith and credit, it cannot affect the devolution of real estate in Maryland, which is peculiarly a matter within the purview of local law. In support of this contention, the appellant refers to *Estin v. Estin, supra.* In that case, a New York decree had awarded a wife maintenance and support money. Subsequently, the husband secured a Nevada decree of absolute divorce, which made no provision for alimony, although the Nevada court had been advised of the New York decree. The question was whether the New York decree was still in force as to the alimony payments, and the Supreme Court said it was, since Nevada had no jurisdiction to alter the wife's rights in her New York judgment, which was obtained at a time when New York had control over the husband, and which it was held created a property interest. The *Estin* case was cited by us in the case of *Epstein v. Epstein,* 193 Md. 164, 175, 66 A. 2d 381, 385. That was an effort by a husband to enjoin his wife, who had obtained a Florida divorce, from disposing of her interest in Maryland property which they held as tenants by the entireties. We did not find it necessary in that case to decide, and expressly refrained from deciding, whether the Florida divorce, if valid, operated to sever the tenancy by the entireties in Maryland, which is the question we are now discussing, but we said: "Maryland is 'the sole mistress' of the devolution of Maryland land. *Hood v. McGehee,* 237 U. S. 611, 615, 35 S. Ct. 718, 59 L. Ed. 1144. No judgment or decree, except a judgment or decree of a Mary-

land court, state or federal, can *directly* operate upon the title to, or possession of, Maryland land. *Fall v. Eastin,* 214 U. S. 1, 14-15." (Emphasis now supplied.) What was asked by the complainants in this case, and what was granted by the court below, was a Maryland decree deciding the *status* of the title of Maryland land. The question is not whether the California decree of divorce changes the title to the Park Heights property from a tenancy by the entireties to a tenancy in common. That it clearly does not do *sua sponte* and does not attempt. The Maryland courts must recognize the California decree under the full faith and credit clause of the United States Constitution as having the same force and effect here as would a Maryland decree of divorce. Since that is the case, the effect of a divorce decree, whether a Maryland divorce, or a divorce granted in another state, to which full faith and credit is given, is to sever the tenancy by the entireties, which is founded upon the unity of husband and wife. That is the result of Maryland law, which holds that when a husband and wife are divorced, they no longer hold property as tenants by the entireties. It is the impact of a valid divorce on our property laws, but it is not brought about by any action of the court of another state, attempting to decide the devolution of Maryland property. Given the valid dissolution of the marriage, Maryland law itself decides what happens to Maryland property, in the light of the facts which are that the former tenants by the entireties are no longer husband and wife. *Reed v. Reed,* 109 Md. 690, 696, 72 A. 414. *Crise v. Smith,* 150 Md. 322, 327-328, 133 A. 110, 47 A. L. R. 467. As a result, the parties become tenants in common, not by California decree, but by Maryland law operating on their changed *status,* and the lower court was correct in decreeing the sale, in lieu of partition, of property so held.

Since we find no error, the decree will be affirmed.

*Decree affirmed with costs.*