Bernard S. Meyer, J.
In this partition action both parties move for summary judgment. The parties were married in New York in 1946. In 1959, plaintiff wife took up residence in Florida and on May 11, 1960, was granted an absolute divorce in that State. The premises sought to be partitioned were acquired by the parties during marriage and held as tenants by the entirety. The Florida decree is presumed valid, notwithstanding that neither the complaint nor plaintiff’s moving papers allege that defendant was served in the Florida proceeding. (Cook v. Cook, 342 U. S. 126.) The rule of De France v. Oestrike (8 A D 2d 735) does not apply since the facts with respect to the due process aspects of the validity of the Florida decree are either known to defendant or a matter of public *540 record, and the facts concerning plaintiff’s domicile appear from his papers to be known to him. It is, therefore, incumbent upon him to set forth facts creating triable issues. As to plaintiff’s domicile, defendant’s papers set forth no factual basis for denying its validity; as to due process, defendant swears only that he did not appear, not that he was not served, in the Florida action. His attorney’s affidavit which does state (par. 6) that the Florida divorce was obtained ‘ ‘ without service of process on ’ ’ defendant is hearsay and insufficient to raise an issue. Notwithstanding the foregoing, plaintiff’s motion must be denied. The full faith and credit clause (U. S. Const., art. IV, § 1) as implemented by section 1738 of title 28 of the United States Code requires only that a State give to the judgment of another State such force and effect as it has in the State in which it was rendered. Any question of jurisdiction aside, plaintiff to be successful would have to show that under Florida law the granting of a divorce converts a tenancy by the entirety into partitionable interests. No such showing is made in plaintiff’s papers, and, in any event, foreign law presents a triable issue of fact preventing summary judgment. (Werfel v. Zivnostenska Banka, 287 N. Y. 91, 93; Read v. Lehigh Val. R. R. Co., 284 N. Y. 435, 444.)
There is, however, a jurisdictional reason why plaintiff’s motion must be denied and defendant’s motion granted. Partition cannot be had of a tenancy by the entirety (Civ. Prac. Act, § 1012; Vollaro v. Vollaro, 144 App. Div. 242). Plaintiff’s complaint pivots, therefore, on the concept that the tenancy by the entirety existing in the subject parcel during marriage was terminated by the Florida divorce. That an absolute divorce severs a tenancy by the entirety and transmutes it to a tenancy in common was first declared in New York in Stelz v. Schreck (128 N. Y. 263) which also rejected the argument that the entire estate vested in the husband because the divorce was for the wife’s adultery. The core of the decision is contained in the following passages (pp. 266-267):
“ At common law husband and wife were regarded as one person, and a conveyance to them by name was a conveyance in law to but one person. These two real individuals, by reason of this relationship, took the whole of the estate between them, and each was seized of the whole and not of any undivided portion. They were thus seized of the whole because they were legally but one person. Death separated them, and the survivor still held the whole because he or she had always been seized of the whole, and the person who died had no estate which was descendible or devisable.
*541 “ Being founded upon the marital relation and upon the legal theory of the absolute oneness of husband and wife, when that unit is broken, not by death, but by a divorce a vinculo, it stands to reason that such termination of the marriage tie must have some effect upon an estate which requires the marriage relation to support its creation. * * *
‘ ‘ It would seem as if the continued existence of the estate would naturally depend upon the continued legal unity of the two persons to whom the conveyance was actually made. The survivor takes the whole in case of death, because that event has terminated the marriage and the consequent unity of person. An absolute divorce terminates the marriage and unity of person just as completely as does death itself, only instead of one as in the case of death there are in the case of divorce two survivors of the marriage, and there are from the time of such divorce two living persons in whom the title still remains. It seems to me the logical and natural outcome from such a state of facts is that the tenancy by the entirety is severed, and a severance having taken place each takes his or her proportionate share of the property as a tenant in common without survivor-ship.”
The rule is thus predicated upon two thoughts: First, that each tenant is seized of the whole estate; second, that the interest of each in the whole is subject to termination as to the whole upon death, or as to one half upon divorce. Defendant, therefore, had an interest in the whole of the subject property, and not in any undivided portion of it* which could be terminated only by death, divorce or consent. (Hiles v. Fisher, 144 N. Y. 306; Finnegan v. Humes, 163 Misc. 840, mod. 252 App. Div. 385, affd. 277 N. Y. 682.) Were plaintiff to die before defendant and before the granting of a divorce, defendant would hold the whole property because he “had always been seized of the whole.” Defendant’s right of survivorship is, therefore, a property right with which only a court having jurisdiction of the property or of defendant’s person could deal.
Defendant’s affidavit states that he did not appear in the Florida action and this statement is not controverted by plaintiff. Clearly, therefore, the Florida court had no jurisdiction over defendant’s person. Clearly also, it had no jurisdiction over real property located in New York. (Tiedemann v. Tiedemann, 172 App. Div. 819, 824, affd. 225 N. Y. 709, appeal dismissed 251 U. S. 536; see, also, Ann. 51 A. L. R. 1081; Ann. 22 A. L. R. 2d 724, 730.) Plaintiff argues, however, that because she had a bona fide Florida residence, the Florida court had jurisdiction over the marital res and that its valid divorce decree *542 destroyed the status which is essential under the rule of Stelz v. Schreck (128 N. Y. 263, supra) to the continuation of the property right. The short answer is that neither as a matter of New York real property law nor as a matter of Federal constitutional law does that result follow and that, in fact, Federal constitutional law proscribes giving the Florida decree the effect thus claimed for it.
Stelz v. Schreck (supra) which established the New York real property rule, dealt with a New York divorce (the Special Term opinion, reported in 25 Abb. N. C. 133, so states). Of the other decisions in which the rule was reiterated, examination of the record in three (Yax v. Yax, 240 N. Y. 590 [a decision on pleadings] ; Yax v. Yax, 125 Misc. 851, affd. 217 App. Div. 714 [the same case after trial]; Hosford v. Hosford, 273 App. Div. 659) shows that they dealt with New York divorces and this appears to have been the case also in Carpenter v. Carpenter (130 Misc. 701) and Middleton v. Middleton (123 N. Y. S. 2d 231). In five others statement of the rule was obiter dictum, the cases involving no divorce (Armondi v. Dunham, 221 App. Div. 679, affd. 248 N. Y. 603; Roberts v. Roberts, 206 Misc. 779, appeal dismissed 285 App. Div. 980; Fine v. Scheinhaus, 202 Misc. 272; Martos v. Martos, 206 Misc. 860; Mardt v. Scharmach, 65 Misc. 124). In only five cases (Grigoleit v. Grigoleit, 205 Misc. 904; Matter of Del, 154 Misc. 216; Melchers v. Bertolido, 118 Misc. 196; Tippin v. King, 187 Misc. 150; Albin v. Albin, 26 Misc 2d 383) were foreign divorces involved. In Grigoleit it was held without discussion that, as concerns the effect of divorce on a tenancy by the entirety, there is no distinction between a New York divorce and a valid foreign divorce. The Melchers action was brought by grantees of the party who obtained the foreign divorce who were, therefore, held estopped. Matter of Dell was a proceeding by an estate creditor for security; the tenancy by the entirety problem arose as part of an alternate argument and is dicta. In Tippin v. King, the foreign divorce obtained by the wife was followed by a New York divorce obtained by the husband; the marriage was thus terminated for all purposes. Albin v. Albin involved a Mexican divorce, granted apparently after defendant’s appearance, and the construction of a written agreement between the parties concerning the property. Only Grigoleit reaches a conclusion opposed to the thesis here advanced. Neither Grigoleit nor any other of the other four discussed the right of survivorship as a property right; all were decided prior to Vanderbilt v. Vanderbilt (1 N Y 2d 342, affd. 354 U. S. 416), discussed below. Support for the view that, as a matter of New York real prop *543 erty law, a foreign divorce obtained on constructive service does not terminate a tenancy by the entirety may be found in New York dower cases (see Ann. 168 A. L. R. 793, particularly the cases discussed at page 799 et seq.), but the value of those cases as authority on the instant question is limited because they involved construction of statutes which the instant case does not and because dower is not dependent upon the continuance of marriage (Van Blaricum v. Larson, 205 N. Y. 355).
The Federal constitutional law argument in support of plaintiff’s position is predicated upon Williams v. North Carolina (325 U. S. 226) and the full faith and credit clause. While that provision requires that New York recognize the Florida decree as terminating the marriage status of the parties, it does not mandate that New York give effect to the change with respect to “ every legal incidence of the marriage relationship.” (Estin v. Estin, 334 U. S. 541, 546; see, also, Lynn v. Lynn, 302 N. Y. 193, 201, cert. denied 342 U. S. 849; Tiedemann v. Tiedemann, 172 App. Div. 819, affd. 225 N. Y. 709, appeal dismissed 251 U. S. 536, supra.) To argue that the defendant loses his right of survivorship because the tenancy by the entirety cannot survive without marital status merely begs the question. The problem is: Is the Florida decree effective to terminate the marital status for purposes of New York real property law? (See Bajkynicz v. Bajkynicz, 5 A D 2d 562.) Van Cleaf v. Burns (133 N. Y. 540) is authority that the full faith and credit clause does not require New York to give an Illinois divorce, obtained apparently after the wife’s appearance, the effect of cutting off her dower in New York lands. If we turn to the community property and estate by the entirety cases, we find that as long ago as 1917, the Supreme Court of Nevada held, in Keenan v. Keenan (40 Nev. 351), that an ex parte Idaho decree had no effect on rights in Nevada community property. As the court analyzed the problem (pp. 355-357): “It [the Idaho court] had acquired no jurisdiction over either the person of the defendant in the divorce action, respondent here, or over the property. Whatever may be the effect of the decree of the Idaho court on the marriage status of respondent here, the great weight of authority holds that under such circumstances as those presented in the record no binding decree in personam could have been entered against the respondent * * *. Hence, this is not a case involving dissolution of a marriage status by decree of a court of competent jurisdiction in so far as the community property is concerned.” The Supreme Court of Idaho reached a similar conclusion in Bedal v. Sake (10 Idaho 270), holding that one who voluntarily left Idaho and the *544 domicile and community property located there and obtained a decree of divorce in a foreign jurisdiction could not thereafter maintain an independent action in Idaho for division of the community property. While Bedal v. Sake was overruled in part by Peterson v. Peterson (35 Idaho 470) on the basis of changes made in Idaho’s community property statute, the court left open the question whether if the resident member of the community had challenged the validity of the foreign decree it would hold the community dissolved by the foreign constructive service divorce. That the Peterson case was phrased in terms of validity rather than jurisdiction is, perhaps, explained by the fact that it was based on Haddock v. Haddock (201 U. S. 562) and was decided long before the concept of “ divisible divorce ” appeared on the constitutional scene.
On the opposite side of the constitutional question, in addition to Grigoleit v. Grigoleit (205 Misc. 904, supra) are Millar v. Millar (200 Md. 14) and Eberle v. Somonek (24 N. J. Super. 366, affd. 27 N. J. Super. 279), both of which hold that partition of property previously held by the entirety will lie following an ex parte foreign divorce; Calhoun v. Calhoun (81 Cal. App. 2d 297) which held that such divorce decree dissolved the marital community and made the former spouses tenants in common; and Buckley v. Buckley (50 Wash. 213) which held that an ex parte decree by the court of the marital domicile may, under the language of the Haddock case, be given effect as a matter of comity by the court of the situs of the property to be partitioned. In Millar, the Maryland Court of Appeals concluded that the full faith and credit clause mandated the result because a Maryland divorce decree would transmute the tenancy to one in common. Section 1 of article IV of the Constitution of the United States authorizes Congress to prescribe the effect in one State of the acts, records and judicial proceedings of another State. The conclusion reached by the Maryland court is contrary to the express language of section 1738 of title 28 of the United States Code, the act of Congress implementing the full faith and credit clause, which requires only that decrees of other States be given the same effect as they have by law or usage in the courts of the States from which they are' taken. Eberle v. Somonek rejected the argument that the foreign decree was “ divisible and can work dissolution of the marriage without affecting title to the real estate in New Jersey ” distinguishing Estin v. Estin (supra) and its companion case, Kreiger v. Kreiger (334 U. S. 555) because they did not deal with real property. As "will be hereafter shown, the property right involved in support cases does not differ from that involved in. *545 this case; further, later decisions, particularly that in Vanderbilt v. Vanderbilt (1 N Y 2d 342, affd. 354 U. S. 416, supra) make the reasoning of the court questionable. The Calhoun case, while its language is flatly opposed to the thesis here advanced, is distinguishable, as are the authorities it cites, on the ground that the partition action was brought by the spouse who was the defendant in the ex parte foreign divorce proceeding. In fact, the court specifically reserved determination of the question involved in the instant case. All three cases, as well as Buckley v. Buckley and the Grigoleit case, are distinguishable in that none discussed the problem of the jurisdiction of the foreign divorce court with respect to property held by the entireties in another State or considered the right of survivor-ship as a property right. And while language may be found in Corpus Juris Secundum, indicating that: “ A valid foreign divorce decree, by its terms or by its necessary effect on property rights which grow out of, or are dependent on, the status of marriage, may terminate all marital rights which one party has in the property of the other ” (27B C. J. S., Divorce, § 382, p. 886) and that: “ The general rules * * * whereby parties to a divorce become tenants in common of community property, or property held as tenants by the entireties, have been applied to foreign divorce decrees ” (27B C. J. S., Divorce, § 385, p. 888) the cases cited, other than those already discussed, deal indiscriminately with both ‘ ‘ in rem ’ ’ and ‘ ‘ in personam ’ ’ jurisdiction and were decided on grounds other than those that concern us here; e.g.— Clouse v. Clouse (185 Tenn. 666) held that a Michigan court having personal jurisdiction of the wife could not make a decree directly affecting Tennessee real estate; Butler v. Bolinger (16 La. App. 397) which held that a California divorce dissolved the community in Louisiana real estate, involved a divorce based on personal service in California. Further, the same text authority recognizes that “ A foreign divorce, obtained without personal jurisdiction having been acquired of the other party, may be valid as to the marital status but not as to property over which the court did not acquire jurisdiction; and, under the 1 divisible divorce ’ doctrine, giving effect to the decree as to the marital status but denying its effect as to property, is not violative of the full faith and credit clause. The full faith and credit clause compels recognition of a foreign divorce only as an adjudication of the marital status, and not of any property rights that may be incident to that status ” (27B C. J. S., Divorce, § 382, p. 885; see, also, § 383).
The last proposition is fully sustained by Vanderbilt v. Vanderbilt (1 N Y 2d 342, supra) which involved the right of a *546 New York wife to obtain support after an ex parte foreign decree of divorce. In upholding the statute which established the procedure whereby such support could be obtained, the Court of Appeals said (pp. 351-352): “ Until Williams v. North Carolina (325 U. S. 226, supra) made effective in this State ex parte divorces like that gotten by this defendant, such divorces had no effect here as to either marriage status or property rights. Then came Williams v. North Carolina, and New York had to give effect to such decrees as terminating marriages. But in the background was Pennoyer v. Neff (95 U. S. 714) and its ancient and undisturbed rule that personal service within the State where suit is brought (or waiver of such service) is required for due process of law to support a personal judgment. So, that part of a foreign (nonpersonal service but otherwise jurisdictionally valid) divorce decree which dealt with status had to be given effect in New York as terminating the marriage but was entitled to no effect at all so far as support or other property rights were concerned. The question is not whether the economic liabilities of a marriage can validly be held to survive a valid divorce. The point is that the divorce obtained by defendant was valid as to status only, but not as to property. * * * But under the ‘ divisible divorce ’ doctrine, defendant’s Nevada divorce had no effect (any more than it said anything in terms) as to plaintiff’s property rights. Its sole effect was to end a marriage and it has been given that effect in New York.” (Italics supplied.) In affirming that decision, the United States Supreme Court held (354 U. S. 416, 418): “ Since the wife was not subject to its jurisdiction, the Nevada divorce court had no power to extinguish any right which she had under the law of New York to financial support from her husband. It has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.”
The right to support involved in the Vanderbilt holding is to be distinguished from the support right granted a wife when a decree in her favor dissolves the marriage. In the latter instance the marriage is terminated for all purposes and the husband, because of Ms fault, is directed to support his ex-wife. On the other hand, the so-called “ divisible divorce ” which results from an ex parte foreign divorce decree leaves the marriage alive for limited purposes, including the wife’s right to support as a wife. (See the exhaustive analysis in Russo v. Russo, 62 N. Y. S. 2d 514, in which it was held that the wife’s contract right to support payments “ during the duration of their marriage ” survived an ex parte Nevada decree; see, also, *547 Ann. 28 A. L. R. 2d 1346 and 1378.) So also, by parity of reasoning, the marriage remains alive with respect to the rights of the New York spouse in New York property held by the entireties. The scope of the faith and credit to be given an ex parte foreign divorce decree being thus limited, the devolution of real property being governed by the law of its situs and the judgment of a foreign State having no force with respect to real property located in this State, the Florida decree obtained by plaintiff has no effect on defendant’s interest as a tenant by the entirety in the property of which partition is sought. To paraphrase the Supreme Court’s language in Vanderbilt, the Florida divorce court had no power to extinguish any right which defendant had under the law of New York to succeed to the entire property upon the death of plaintiff. It is thus the due process clause as it applies to the husband’s property rights, and not the full faith and credit clause as it applies to the marital status of the parties, which governs. It should be noted that the conclusion that defendant is entitled to a dismissal of the complaint on the merits is reached on purely legal grounds and wholly aside from any question of the equities involved in the marital situation.
One further point warrants discussion. In Estin v. Estin (334 U. S. 541, supra) Justices Frankfurter and Jackson both argued in separate dissents that a Nevada divorce decree should terminate the support provisions of a prior New York separation judgment because a New York decree would be given that effect. The concluding sentence of Justice Douglas’ opinion for the majority left open the question whether discrimination in favor of domestic ex parte divorces would be unconstitutional, and the point has not yet been finally determined by the Supreme Court. Indeed, there seems to be diversity of opinion concerning whether the possible unconstitutionality arises from the section 1 of article IV requirement of full faith, as the Estin decisions seem to suggest, or from the privileges and immunities clause of section 2 of article IV (see Vanderbilt v. Vanderbilt, 1 N Y 2d 342, 352, supra; Morris, Divisible Divorce, 64 Harv. L. Rev. 1287, 1299 [1951]). The Morris article concludes that a State may constitutionally adopt the policy that support orders of its courts survive an ex parte foreign decree but do not survive an ex parte domestic decree (p. 1300), although absent such a prior established policy it could not under the guise of determining State law refuse to recognize the Federal right granted by the full faith and credit clause (p. 1297). (See, also, Ann. 28 A. L. R. 2d 1378, 1386, 1390.) As above noted in the discussion of the Millar case (200 Md. 14, supra) the lan *548 guage of section 1738 of title 28 of the United States Code also appears to provide an answer to the Frankfurter-J ackson argument. Whether either of those answers is sufficient need not be determined for purposes of the point now under discussion. So far as can be determined, none of the New York tenancy by the entirety cases discussed above dealt with a New York ex parte decree. However, Cox v. Cox (266 App. Div. 38, 40) held that real property rights may not be adjudicated in New York matrimonial actions, and that rule has been modified only by the authorization given in section 1164-a of the Civil Practice Act with respect to occupancy of property held by the entireties. A cause of action seeking adjudication of real property rights could, of course, be joined in a matrimonial complaint. But, were that done, the jurisdiction necessary to cut off the right of survivorship in the New York real property could, in the case of a nonresident defendant, be acquired only by seizure of the real property prior to judgment (Geary v. Geary, 272 N. Y. 390, 398, 402; Matthews v. Matthews, 247 N. Y. 32, 34), and would, in the case of a resident defendant, rest on the defendant’s New York residence and the New York situs of the real property (even if it be assumed that in such case seizure would not be required, an assumption which is by no means clear). In neither case would an ex parte New York divorce decree be given favored treatment; in either case there would exist a basis for New York’s real property adjudication differentiating it from a foreign State’s matrimonial judgment. Thus, even if it be assumed that New York may not constitutionally discriminate in favor of its own ex parte divorce decrees, that prohibition does not militate against the conclusion here reached. For the foregoing reasons, a short-form order dismissing the complaint on the merits has been signed.