Lester Holtzman, J.
In a surplus money proceeding the claimant Regent Discount Corp. moves to confirm the Referee’s report and findings.
The surplus moneys arose out of the sale of realty owned by the defendants Martin Gr. Thuna and Barbara Diane Thuna as tenants by the entirety, pursuant to a judgment of foreclosure. Regent Discount Corp. is the owner of a second mortgage on the said premises. This mortgage was given to secure the payment of a series of promissory notes dated August 1, 1958, made by Jomar Television Labs., Inc., to Regent and indorsed by the defendant Martin G. Thuna. The second mortgage was signed by Martin G. Thuna in December, 1958 and was purportedly signed by defendant Barbara Diane Thuna at the same time. The latter denies signing the document. The defendant Burton N. Pugach is a judgment creditor of Martin G. Thuna, having recovered two judgments for the total sum of $27,240, which were docketed on April 12, 1960.
After hearing all of the evidence, including testimony by Barbara Diane Thuna, a handwriting expert, and a notary public before whom the second mortgage was purportedly signed by Barbara Diane Thuna, the Referee found that her purported signature was a forgery and that she never signed the document. He also found that the defendants Martin G. Thuna and Barbara Diane Thuna have been validly divorced in Mexico and, consequently, are now tenants in common in the proceeds from the sale of the real property formerly owned by them as tenants by the entirety. He also found that the claimant Regent has a valid lien against the interest of Martin G. Thuna in the proceeds for the sum of $10,976.80, which is greater than the total amount of the surplus moneys. The Referee found that Regent’s lien is entitled to priority over the judgment creditor Pugach. He, accordingly, recommended that the surplus moneys should be divided equally between Regent Discount Corp. and the defendant Barbara Diane Thuna,
*744 The special guardian for Martin G. Thuna and Burton 1ST. Pugach opposes the motion to confirm. His opposition is based on the contention that a Mexican divorce does not terminate a tenancy by the entirety and that each of the Tiranas remains a tenant by the entirety with an undivided interest in the whole property which is subject to divestiture only by death. He does not dispute the validity of the Mexican divorce.
It is clear that a New York divorce terminates a tenancy by the entirety. (Yax v. Yax, 240 N. Y. 590.) In the opinion of this court a valid foreign divorce also terminates such a tenancy. A tenancy by the entirety is a special form of real property ownership which arises out of the marital relationship of the tenants. As stated by the court in Stelz v. Shreck (128 N. Y. 263, 266-267):
“ At common law husband and wife were regarded as one person, and a conveyance to them by name was a conveyance in law to but one person. These two real individuals, by reason of this relationship, took the whole of the estate between them, and each was seized of the whole and not of any undivided portion. They were thus seized of the whole because they were legally but one person. Death separated them, and the survivor still held the whole because he or she had always been seized of the whole, and the person who died had no estate which was descendible or devisable.
“ Being founded upon the marital relation and upon the legal theory of the absolute oneness of husband and wife, when that unity is broken, not by death, but by a divorce a vinculo, it stands to reason that such termination of the marriage tie must have some effect upon an estate which requires the marriage relation to support its creation. * * * When the idea upon which the creation of an estate by the entirety depends is considered, it seems to me much the more logical as well as plausible view to say that as the estate is founded upon the unity of husband and wife, and it never would exist in the first place but for such unity; anything that terminates the legal fiction of the unity of two separate persons ought to have an effect upon the estate whose creation depended upon such unity. It would seem as if the continued existence of the estate would naturally depend upon the continued legal unity of the two persons to whom the conveyance was actually made. The survivor takes the whole in case of death, because that event has terminated the marriage and the consequent unity of person. An absolute divorce terminates the marriage and unity of person just as completely as does death itself, only instead of one as in the case of death there are in the case of divorce two survivors of the marriage, and there are *745 from the time of such divorce two living persons in whom the title still remains. It seems to me the logical and natural outcome from such a state of facts is that the tenancy by the entirety is severed, and a severance having taken place each takes his or her proportionate share of the property as a tenant in common without survivorship.”
If a Mexican divorce is of such a nature that the State of New York recognizes it as valid to sever the marital relationship, then it would be illogical to hold that a form of property ownership, which is dependent on the existence of the marital relationship, can continue after such a divorce. It would not seem to matter where the divorce was obtained as long as it is valid according to the laws of this State. The court is aware of Special Term decisions to the contrary (Huber v. Huber, 26 Misc 2d 539; Leis v. Shaughnessy, 26 Misc 2d 536), but is of the opinion that such decisions are inconsistent with the rationale expressed in Stelz v. Shreck (supra). (See, also, Albin v. Albin, 26 Misc 2d 383; Grigoleit v. Grigoleit, 205 Misc. 904.)
The special guardian also objects to the claim of Regent on the ground that there is no proof of notice of protest as required by section 160 of the Negotiable Instruments Law. An examination of the transcript of proceedings held by the Referee, however, indicates that there was sufficient testimony that notice of protest was given to support the findings of the Referee.
The report of the Referee is confirmed and the findings are adopted. The proceeds of the surplus moneys, after the payment of the expenses of the Referee in the sum of $30 and the Referee’s fee, which is set at $250, and the payment of the special guardian’s disbursments of $2 and his fee, which is set at $250, shall be paid to Barbara Diane Thuna and Regent Discount Corp. in equal shares.